*In re* ÁNGEL LUIS OCASIO ARRIAGA, querellado.

*Números:* CP-88-485 *Resueltos:* 1ro de diciembre de 1992
 MC-88-26

*Norma Cotti Cruz, Subprocuradora General, Miriam Álvarez Archilla* y *Eladís Orsini Zayas, Procuradoras Generales Auxiliares*, abogadas del querellante; *Miguel A. Febles González*, abogado del querellado; *Ángel Luis Ocasio Arriaga, pro se.*

PER CURIAM: El Procurador General compareció ante nos presentando un informe sobre la conducta profesional del Lcdo. Ángel Luis Ocasio Arriaga. Examinado este informe, ordenamos al Procurador formular la correspondiente querella contra dicho abogado. En cumplimiento de dicha orden, el Procurador impuso y formuló el cargo siguiente:

> El abogado Angel Luis Ocasio Arriaga incurrió en conducta ilegal y antiética allá para el 25 de junio de 1982 al disponer impropiamente del dinero de su cliente, Milagros I. Rivera Guevara, para su uso personal.
>
> Este abogado depositó en su cuenta bancaria particular, número 115-72579-2 del Banco Popular de Puerto Rico, el cheque número 196708 del Banco Central y Economías fechado 22 de junio de 1982 por la cantidad de $15,901.47 a nombre de Milagros Ivette Rivera Guevara, su cliente. Querella, pág. 1.

Vista la anterior querella, nombramos como Comisio-

nado Especial para escuchar y recibir la prueba que las partes pudieran presentar al Lcdo. Agustín Mangual Hernández, ex juez superior. Éste rindió su informe y las partes expresaron su posición por escrito al respecto, por lo que estamos en condiciones de evaluar el caso ante nos.

Todas las partes están contestes con las determinaciones de hecho siguientes que hiciera el Comisionado Especial, las cuales transcribimos y adoptamos como propias.

2. El 17 de enero de 1973, la Lcda. June I. Ortiz, abogada de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, radicó una moción ante el Tribunal Superior, Sala de San Juan, en el caso civil número 73-350 mediante la cual consignaba la suma de $9,994.00 a favor de la beneficiaria menor de edad, Milagros I. Rivera Guevara (Exhibit III de la prueba estipulada).

3. El 10 de febrero de 1982 ante el querellado actuando como notario, comparecieron don Edgardo Rivera Marrero y Milagros Ivette Rivera Guevara, y el primero emancipó a la segunda mediante la escritura número 4 de esa fecha. Surge de la misma que Milagros Ivette Rivera Guevara nació el 13 de enero de 1964 (Exhibit VIII de la prueba estipulada).

4. El 24 de marzo de 1982 el querellado Angel Luis Ocasio Arriaga, en representación de Milagros Ivette Rivera Guevara radicó una moción de retiro de fondos en el mencionado caso civil 73-350, en la cual se alegaba que habiendo sido emancipada la peticionaria solicitaba se le entregara lo allí consignado y depositado en la cuenta número 07-091253-5. (Exhibit IV de la prueba estipulada).

5. El Tribunal Superior de San Juan mediante Orden de 15 de junio de 1982 dictaminó que se le entregara un cheque a favor de la peticionaria María Ivette Rivera Guevara, de conformidad con la mencionada moción de retiro de fondos (Exhibit V).

6. El Lcdo. Angel Luis Ocasio Arriaga recibió el cheque número 196708 expedido por la Secretaría del Tribunal a nombre de la Srta. Milagros I. Rivera Guevara por la cantidad de $15,901.47 y lo depositó en una cuenta personal que tenía en la sucursal de Santa Rosa del Banco Popular y que lleva el número 115-72579-2, con número de Seguro Social 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, que es el mismo número de Seguro Social del querellado en este caso (Exhibit VII [de] la prueba estipulada).

7. La señorita Rivera Guevara declaró ante el Procurador

General que la firma que tiene al dorso el mencionado cheque no es su firma porque ella no endosó el mencionado cheque y no lo vio hasta que se le mostró copia del mismo el [10] de mayo de 1988.

8. El querellado le entregaba cantidades de dinero a la señorita Rivera Guevara desde el año 1983.

9. Declaró, además, la señorita Rivera Guevara que cuando el querellado le entregó las cantidades parciales le dijo que no podía sacar el dinero completo, que sólo lo podía sacar en pequeñas cantidades. Declaró, además, que el 10 de septiembre de 1986 él le prometió que para el 31 de enero de 1987 le saldaría el remanente de la cantidad que él había depositado en su cuenta, pero no fue hasta el 5 de mayo de 1988 que le entregó el remanente de dicho dinero (Exhibit X de la prueba estipulada).

10. Durante la vista celebrada ante el suscribiente, la señorita Rivera Guevara declaró que estaba solicitando su dinero desde que cumplió los dieciocho (18) años, cuando fue emancipada, y que el querellado le daba el dinero poco a poco y ella deseaba la cantidad completa (Página 7 de la transcripción del testimonio de la señorita Rivera Guevara).

11. El querellado le entregó a la señorita Rivera Guevara un gran total de $22,700.00 desde el año 1983 hasta mayo de 1988. Informe del Comisionado Especial, pág. 2.

Surge, además, del expediente de autos que en términos económicos la señorita Rivera Guevara no sufrió daño alguno ya que recibió todo el dinero al cual era acreedora, junto con los intereses correspondientes. Surge también que el querellado es pariente político de la señorita Rivera Guevara ya que está casado con una prima de ésta, y que vino a ser representante legal de la joven Rivera Guevara a raíz de su emancipación por encomienda del padre de ésta, Edgardo Rivera Marrero, quien es primo hermano de la esposa del querellado. Finalmente, surge del expediente que después de presentada la querella contra el licenciado Ocasio Arriaga por el Procurador General de Puerto Rico, tanto la señorita Rivera Guevara como su padre, suscribieron una declaración jurada haciendo constar, en esencia, que la conducta del licenciado Ocasio Arriaga respondió a las directrices que éste recibiera del padre de la joven Rivera Guevara, aceptando ambos que el licenciado Ocasio

Arriaga nunca cobró honorarios de clase alguna por los servicios rendidos a ellos, y que lo realizado por el querellado había sido para el beneficio de la señorita Rivera Guevara. Ésta declaró también que no deseaba que el Ministerio Público siguiera adelante con esta querella.

Lamentablemente, la conducta del licenciado Ocasio no cumplió cabalmente con lo que exigen los cánones de ética profesional, por lo cual no puede escapar al ejercicio de nuestra facultad disciplinaria.

 El Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone en su último párrafo que:

> La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y *no debe mezclarlos con sus propios bienes ni permitir que se mezclen.* (Énfasis suplido.)

 El licenciado Ocasio debió tener presente que aun cuando inicialmente era el padre de la señorita Rivera Guevara el que había solicitado sus servicios profesionales, ésta se convirtió en su cliente cuando él compareció representándola ante el tribunal —luego de su emancipación— para retirar los fondos de la joven que estaban allí depositados. Como su abogado, no podía retener el dinero de su nueva cliente sin que importaran los lazos familiares que les unían ni las directrices que le fueron impartidas por el padre de la joven para beneficio de ella. Su conducta infringió el Canon 23 citado y constituye una falta que no podemos ignorar. Sin embargo, tomando en consideración como atenuantes: (a) là ausencia de perjuicio a la señorita Rivera Guevara; (b) las circunstancias sui géneris de este caso, que no representa la situación ordinaria de conducta impropia dispuesta en los cánones por tratarse más bien de un asunto entre parientes; (c) los sufrimientos que estamos seguros ha tenido el querellado durante todo el trá-

mite ante nos, y (d) su actitud de cumplimiento, diligencia y responsabilidad para con nuestras órdenes, limitamos nuestra sanción a una reprobación formal de su conducta. *Se censura la actuación del Lcdo. Ángel Luis Ocasio Arriaga y se le apercibe respecto a no volver a mezclar el dinero de sus clientes con los bienes propios.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Negrón García disintió con opinión escrita. El Juez Asociado Señor Rebollo López disintió con opinión escrita.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

I

Los principios deontológicos siguen palideciendo. No podemos limitar la sanción disciplinaria a una simple censura y apercibimiento. "[E]l retraso en la devolución de fondos a los clientes ... es grave, porque no sólo implica vulnerar principios éticos, sino que roza la infracción penal." R.H. Viñas, *Ética de la abogacía y la procuración*, Buenos Aires, Ed. Pannedille, 1972, pág. 193.

El Canon 23 del Código de Ética Profesional, 4 L.P.R.A., Ap. IX, *in fine*, dispone que la "naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas *en la honradez absoluta*. En particular, debe darse *pronta cuenta* del dinero u otros bienes del cliente que venga a su posesión y *no debe mezclarlo con sus propios bienes ni permitir que se mezclen*". (Énfasis suplido.)

En juego están valores éticos-comunitarios pluridimensionales, que trascienden los intereses privados y los deseos de los protagonistas.

La delicadeza es regla imperativa en el ejercicio de la abogacía. *Por ello la probidad debe llevarse hasta el escrúpulo.* La negligencia y la falta de orden en el manejo de dineros u otros bienes del cliente, sea que provengan de entregas hechas directamente por éste o por la contraparte o efectuadas por cualquier otro conducto, aunque sea explicable en algunos casos de gran recargo de trabajo profesional, suelen conducir a una sospecha de indelicadeza, lo cual es gravísimo para el abogado que sea culpable de dicho descuido. Es, pues, indispensable, cuando en una oficina de abogado se. manejan dineros ajenos, como es el caso de quienes se dedican a juicios ejecutivos, cobranzas extrajudiciales, administración de bienes en virtud de poder general, etc., disponen de una adecuada organización contable y administrativa que asegure al cliente el cuidadoso manejo de sus bienes y la oportuna rendición de cuentas.

Si aun la negligencia o el desorden pueden conducir a sospecha de indelicadeza, *con mayor razón se presentará tan grave presunción cuando el abogado demora, aunque sea por pocos días, la entrega de dinero que el cliente espera, o cuando omite informar sobre la cuantía excacta del dinero que ha recibido con destino a dicho cliente o no expide recibos por los valores que se le entregan.* S. Syro Giraldo, *Ética de la Abogacía, Derecho*, XVIII Rev. C. Abo. Medellín 53 (1970).

## II

La seriedad de la actuación del Lcdo. Ángel L. Ocasio Arriaga es manifiesta. El trasfondo de hechos refleja un esquema que hábil y subrepticiamente le permitió, durante cinco (5) años, mezclar y utilizar para su beneficio exclusivo, el dinero perteneciente a la joven Milagros I. Rivera Guevara. Su conducta violó la veracidad, característica intrínseca que debe animar a quien es llamado a servir la justicia y a colaborar en su administración. *In re Rodríguez Bonhomme*, 119 D.P.R. 500 (1987); *In re Zamot Pérez*, 119 D.P.R. 58 (1987); *In re Elías Rivera*, 118 D.P.R. 174 (1986); *In re Arana Arana*, 112 D.P.R. 838 (1982).

Rechazamos la conclusión de que la Señorita Rivera Guevara no sufrió daño alguno por el simple hecho de que años después recibió finalmente su dinero, más los

intereses. Nunca se pactó un préstamo. Para obtener dinero, están los bancos y las demás instituciones financieras. El Tribunal pasa por alto que ella era acreedora a recibirlo totalmente, sin que el licenciado Ocasio Arriaga se lo entregara "poco a poco" a modo de *cuentagotas*. Ese proceder desnaturalizó el propósito de su emancipación judicial.

La actuación del licenciado Ocasio Arriaga merece ser sancionada con una suspensión temporal del ejercicio de la abogacía. La condición de pariente no es defensa. La fiducia, eje central de los cánones de ética profesional, protege también a los parientes, sean por afinidad o políticos.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Disentimos; ello por razón de entender que la "sanción" impuesta en el presente caso —consistente la misma en un "apercibimiento"— es una insuficiente.

Conforme surge de la Opinión Per Curiam emitida por la mayoría del Tribunal, el abogado Ángel Luis Ocasio Arriaga se *apropió ilegalmente* de un dinero perteneciente a un cliente. Esto es, en efecto cometió el delito de apropiación ilegal agravada que establece el vigente Código Penal de Puerto Rico en su Art. 166 (33 L.P.R.A. sec. 4272).

El hecho de que la perjudicada fuera pariente del abogado querellado; que dicha perjudicada, y sus familiares, *posteriormente* "perdonaran" al referido abogado; y que éste restituyera el dinero que se había apropiado, *no* hace menos grave la conducta en que éste incurrió.

Pero, hay más. En días recientes, y por conducta similar, hemos separado del ejercicio de la profesión de abogado a otros miembros de la profesión. Ciertamente *no* estamos aplicando la "misma vara" en el presente caso. No se debe perder de vista que el ser consistentes en nuestra decisio-

nes, aun cuando no es garantía absoluta de que resolvemos correctamente, sí es garantía de tranquilidad de conciencia.