*In re* WILFREDO RODRÍGUEZ MERCADO, querellado.

*Número:* CP-90-27          *Resuelto:* 30 de abril de 1993

*Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Procuradora General Interina, José Roberto Vega Díaz* e *Iván F. Fuster, Procuradores Generales Auxiliares,* abogados de El Pueblo; *Víctor M. Ramírez, Comisionado Especial; Wilfredo Rodríguez Moreno, pro se.*

PER CURIAM:

I

El 28 de julio de 1988 la Sra. Alice López presentó, en la Oficina del Procurador General, una queja por conducta profesional contra el Lcdo. Wilfredo. Rodríguez Mercado.

En síntesis, la querellante informó que había contratado los servicios profesionales del querellado para que le preparara unas escrituras y lograra su correspondiente inscripción; que le había pagado por los servicios contratados; que habían transcurrido 5 años, y que a pesar de múltiples gestiones con el abogado, a la fecha de la presentación de su queja ante la Oficina del Procurador General, el querellado no le había entregado las copias certificadas de

las escrituras. Alegó la querellante que el licenciado Rodríguez Mercado le ofreció información falsa al decirle que las escrituras habían sido presentadas ante el Registro de la Propiedad y que estaban en vías de ser inscritas.

La Oficina del Procurador General notificó al querellado de la queja en su contra. El 19 de septiembre de 1988, éste le contestó que había presentado, ante el Registro de la Propiedad, las escrituras objeto de la queja y que la querellante podía pasar por su oficina a buscar copias simples de éstas y los boletos de presentación. Dicha información, a su vez, fue comunicada a la querellante por el Procurador General el 9 de marzo de 1989. Se le recomendó a la querellante que obtuviera del querellado los correspondientes boletos de presentación y recogiera personalmente las escrituras en el Registro de la Propiedad o investigara su *status* en dicho Registro.

Alegadamente la querellante, entonces, intentó comunicarse con el licenciado Rodríguez Mercado en numerosas ocasiones, resultando infructuosas todas sus gestiones. Finalmente, la secretaria del querellado le informó que en su oficina no había boletos de presentación, ya que las escrituras en cuestión no habían sido presentadas.

El 17 de noviembre de 1989, la Oficina del Procurador General solicitó a este Tribunal que en vista de los hechos anteriormente narrados se ordenara al abogado querellado cumplir a la mayor brevedad posible con las gestiones a él encomendadas e informar a la querellante el resultado de las mismas.

Visto el informe del Procurador General, emitimos una Resolución el 14 de diciembre de 1989 ordenándole a dicho funcionario presentar una querella que contuviera los correspondientes cargos contra el referido abogado.

El 9 de enero de 1990 el Procurador General Interino presentó una querella contra el Lcdo. Wilfredo Rodríguez Mercado, en la cual se le imputaron al querellado los siguientes cargos:

## Cargo I y II

El Lcdo. Wilfredo Rodríguez Mercado actuó en forma impropia y antiética en su relación profesional con la Sra. Alicia López cuando, luego de contratársele para la preparación, autorización e inscripción de una escritura, de haber cobrado por las antes mencionadas gestiones y haber transcurrido, al presente, en exceso de siete (7) años, aún no ha realizado las gestiones para las que fuera contratado, ni ha mantenido informada a su cliente de su disposición o falta de disposición para realizar su encomienda, acción que viola el canon 18 y el canon 19, respectivamente, de los de Etica Profesional.

## Cargo III

El Lcdo. Rodríguez Mercado también violó el canon 26 de los de Etica Profesional al ofrecer información falsa a su cliente y a esta Oficina conducente a establecer que las gestiones encomendadas estaban en proceso de ser concluídas, información cuya falsedad fuese posteriormente corroborada, todo ello con la intención de que fuese desatendido el asunto de referencia. Querella, pág. 1.

El querellado contestó la querella el 7 de febrero de 1990, negando que hubiese violado canon alguno.[1]

El 7 de marzo de 1990 designamos al Lcdo. Alfonso L. García Martínez como Comisionado Especial para entender en este caso, quien, mediante orden de 14 de enero de 1990, señaló para el 1ro de agosto de 1990 una conferencia

---

[1] En el informe de conferencia entre abogados, la parte querellada presentó la teoría siguiente:

"[Que] la Sra. Alice López [había] contr[atado] los servicios del querellado para que éste llevara a cabo lo relacionado a petición de declaratoria de herederos de su difunta madre, Doña Amparo Goitía.

"Una vez terminado el proceso de declaratoria de herederos, se preparó Instancia al Registrador de la Propiedad de Bayamón, la cual fue suscrita por la [señora] López el día 28 de enero de 1988.

"[Que] posteriormente [se envió] a la Sra. María Elena Aponte, secretaria de [la] oficina, a presentar dicho documento al Registro de la Propiedad.

"[Dado] el tiempo que transcurre en la inscripción de documentos en el Registro de la Propiedad de Bayamón, cuando se nos escribió de la Oficina del Procurador, le informamos que se habían presentado al Registro [e invitamos·a la querellante] a que pasara a recoger copia simple de los documentos y copia de los boletos.

"Cuando le preguntamos a la Sra. Aponte, ésta nos informó que iba a investigar el status de la inscripción. Luego fue que nos informó que recordaba que no la aceptaron en el Registro porque de la misma se desprendía una división de herencia[, por lo que no pudo ser inscrita]." Informe de conferencia entre abogados, pág. 2.

con antelación a la vista del caso. Posteriormente, dicha conferencia fue suspendida y los abogados de las partes sometieron un informe de conferencia entre abogados.

En vista del delicado estado de salud del licenciado García Martínez, el 16 de octubre de 1990 designamos al Lcdo. Víctor Ramírez Morell como Comisionado Especial para que continuara con los procedimientos del caso.

Durante la conferencia con antelación a la vista, celebrada el 27 de diciembre de 1990, se discutió el informe de conferencia entre abogados y una moción que había presentado el Procurador General el 7 de diciembre de 1990, para solicitar enmiendas a dicho escrito. Las partes acordaron estipular la prueba documental adicional según solicitó el Procurador General.

El querellado informó haber contratado los servicios de un abogado como su representante legal, y se le concedieron 10 días para notificar nombre y dirección del abogado. Se señaló una vista, para la querella en su fondo, para el 25 de febrero de 1991.

Llegado ese día, se celebró la vista de la querella en su fondo. Prácticamente, toda la prueba documental fue admitida y estipulada por las partes.

Durante la vista, declararon bajo juramento, y fueron contrainterrogados, la Sra. Alice López Goitía, por la querellante, y la Sra. María E. Aponte y el Lcdo. Wilfredo Rodríguez Mercado, por el querellado.

Considerada la prueba testifical presentada durante la vista del caso y examinada la prueba documental, el 21 de agosto de 1991 el Comisionado Especial presentó ante nos su informe, que en lo pertinente contiene las siguientes determinaciones de hecho:

[1.] Para enero de 1983, luego de haber fallecido la [Sra. Amparo Goitía Torres,] madre de [la Sra. Alice López,] ésta requirió los servicios del querellado para la preparación, otorgamiento e inscripción en el Registro de la Propiedad, de los siguientes documentos:

a) Escritura de cesión de participación en sociedad legal de gananciales y usufructo viudal.

b) Escritura de cesión derechos hereditarios y acciones.

c) Instancia al Registrador de la Propiedad, solicitando la inscripción de la sentencia declaratoria de los herederos de Amparo Goitía Torres.

d) Los mencionados documentos legales fueron otorgados: el primero, el 19 de enero de 1983, el segundo el 28 de agosto de 1986, y el tercero el 28 de enero de 1988, todos ante el [n]otario querellado.

[2.] La querellante pagó al [n]otario querellado la suma de $700.00 el 20 de mayo y el 28 de agosto de 1986.

[3.] Los ... documentos ante[s] mencionados no fueron presentados para [ser] inscri[tos] en el Registro de la Propiedad sino hasta el 7 de diciembre de 1989, o sea seis años once meses luego de otorgarse el primer documento.

[4. Luego de]l otorgamiento de los documentos, la querellante trató de comunicarse con el querellado en varias ocasiones y no logr[ó] conseguirlo. Solamente lograba comunicarse con la [s]ecretaria del [n]otario, quien le informaba que el [licenciado] Rodríguez Mercado no estaba disponible. La querellante le dej[ó] mensaje[s] al querellado y nunca recibió llamada alguna.

[5.] La querellante, al verse imposibilitada de comunicarse con el querellado [para solicitarle] información sobre la inscripción de los tres documentos legales [aludidos], decidió presentar querella ante el Procurador General de Puerto Rico, quien posteriormente, y luego de investigar las alegaciones de la querellante, radicó la presente querella ....

[6.] El día 1ro de septiembre de 1988 la Oficina del Procurador General ... [le informó] al Lcdo. Wilfredo Rodríguez Mercado que la Sra. Alice López había presentado ante ... su Oficina una queja alegando que el querellado no había cumplido con el contrato de servicios profesionales convenido con ella.

[7.] El 19 de septiembre de 1988 el querellado envió una comunicación al Procurador General informándole que los documentos legales a que hacía referencia la señora López, habían sido presentados en el Registro de la Propiedad de Bayamón. A su vez indic[ó] que la señora López podía pasar por la Oficina a buscar copia simple de los documentos y los boletos de presentación. Esta información provista por el querellado al Procurador General es incorrecta. Los documentos fueron presentados al Registro de la Propiedad el 7 de diciembre de 1989, casi un año después.

[8.] El 9 de marzo de 1989, el Procurador General ... envió carta a la querellante, Sra. Alice López, informándole lo expre-

sado por el [n]otario querellado sobre la presentación de los documentos [sic] en el Registro de la Propiedad, y que podía acudir a la [o]ficina del [n]otario a recoger los boletos de presentación.

[9.] El 12 de abril de 1989 la querellante, Alice López, [le] informó] al Procurador General que siguiendo las instrucciones contenidas en la carta del 9 de marzo de 1989, acudió a la [o]ficina del [n]otario querellado para que le entregara los boletos de presentación y poder retirar los documentos del Registro de la Propiedad. [L]a querellante [alegó] que gestionó tres citas con el notario por [medio] de su secretaria y [que] en [ninguna de esas] tres ocasiones ... pudo hablar o ver al [querellado. Esta información le fue comunicada al querellado el 8 de agosto de 1989, por la oficina del Procurador General].

[10.] El 23 de agosto de 1989 la querellante ... [le] escribió ... nuev[amente] al Procurador General [y le] infor[mó] que hasta esa fecha no había logrado comunicación con el Lcdo. Wilfredo Rodríguez Mercado, y que la [s]ecretaria del [n]otario le había informado que no había boleto de presentación alguno en su poder, ya que los documentos no habían sido presentados en el Registro de la Propiedad.

[11.] Posteriormente, el Procurador General requirió del Registro de la Propiedad, [s]ección [s]egunda de Bayamón, información sobre la[s] presentacione[s], si alguna, que se verificaron durante el per[í]odo comprendido del 29 de enero de 1988 hasta el 28 de febrero de 1988, con referencia a la propiedad envuelta en el problema, certificando el Registrador de la Propiedad que de sus diarios de presentación de [dichos] días ... no aparecía inscrito documento alguno ... relacion[ado] a la ... propiedad [en cuestión].

[12.] De la prueba documental presentada y estipulada, surge que los tres documentos legales descritos anteriormente fueron presentados al Registro de la Propiedad, [s]ección [s]egunda de Bayamón, el 7 de diciembre de 1989, por lo que la información ofrecida por la [s]ecretaria del [n]otario querellado a la querellante, Alice López, era errónea. También era errónea la información ofrecida por el [n]otario querellado al Procurador General ... en su carta ... de 19 de septiembre de 1988.

[13.] El querellado confió en su secretaria, Sra. María E. Aponte, delegando en ella la responsabilidad de presentar los documentos legales de la querellante al Registro de la Propiedad y no verificó posteriormente dentro de un tiempo razonable si la gestión se había realizado.

[14.] La Sra. María E. Aponte admitió bajo juramento durante la vista, su error y su olvido al no presentar los documen-

tos en el Registro de la Propiedad dentro de un término razonable, proveyendo información errónea al querellado.

[15.] El querellado bajo juramento durante la vista, admitió que era su responsabilidad como notario cualquier error, acción u omisión de su secretaria en gestiones ante el Registro de la Propiedad.

[16.] El querellado no cumplió con su deber de realizar diligentemente las gestiones que la querellante le encomendó, confiando erróneamente en su secretaria.

[17.] Es impropio del querellado relevarse de responsabilidad por actos u omisiones negligentes en su gestión profesional que le encomendara su cliente, la Sra. Alice López Goitía. Informe y determinaciones de hechos, págs. 4–8.

## II

Luego de examinar el informe rendido por el Comisionado Especial y la prueba documental que obra en autos, concluimos que el querellado incurrió en conducta impropia y antiética al faltar a su deber de diligencia hacia su cliente y a su deber de mantenerle informado de todo asunto importante relacionado a su caso. Cánones 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([2])

Las razones que adujo el licenciado Rodríguez Mercado para justificar el incumplimiento de dichos deberes son insuficientes para eximirlo de ser sancionado.

Como bien señaláramos en *In re Porrata-Doria Harding*, 128 D.P.R. 416, 418 (1991), "[e]n todas sus fases, la práctica de la notaría es una gestión de mucho esmero y

---

([2]) En lo pertinente, dichos cánones señalan lo siguiente:
*"Canon 18. Competencia del abogado y consejo al cliente*

"Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

*"Canon 19. Información al cliente*
"El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado." 4 L.P.R.A. Ap. IX.

cuidado; sobre todo, es de carácter intransferible y personal".

■ En vista de que el Lcdo. Wilfredo Rodríguez Mercado había delegado en su secretaria la responsabilidad de presentar ciertos documentos en el Registro de la Propiedad, era su deber supervisar a dicha empleada de manera que ésta realizara la gestión encomendada diligentemente. No fue hasta que el licenciado Rodríguez Mercado recibió las comunicaciones escritas de la Oficina del Procurador General que se ocupó de verificar el *status* del caso y se enteró de que su secretaria no había podido presentar los documentos en cuestión al Registro de la Propiedad.

Por las razones anteriormente expuestas y examinados los cargos formulados contra el Lcdo. Wilfredo Rodríguez Mercado, *se disciplina al notario querellado ordenándose su separación del ejercicio de la notaría por el término de seis meses.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García disintió mediante opinión escrita. El Juez Asociado Señor Hernández Denton disintió mediante opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López.

**— O —**

Opinión disidente del Juez Asociado Señor Negrón García.

### I

"Los principios deontológicos siguen palideciendo." *In re Ocasio Arriaga*, 132 D.P.R. 61 (1992), opinión disidente. En esta ocasión, con referencia al ejercicio fiel, diligente y responsable de la notaría, que es de carácter intransferible. La leve sanción disciplinaria impuesta no guarda proporción con la gravedad de las faltas.

Se admite que los tres (3) instrumentos notariales otorgados por el querellado Rodríguez Mercado no fueron presentados para su inscripción en el Registro de la Propiedad hasta el 7 de diciembre de 1989, es decir, seis (6) años once (11) meses después del primero. También, que las gestiones de la Sra. Alice López Goitía para comunicarse con el notario Rodríguez Mercado fueron infructuosas. Aún después que se quejó a través de la Oficina del Procurador General, no pudo obtener los boletos de presentación de tales instrumentos pues, contrario a lo informado por el querellado, no habían sido presentados.

Obviamente el notario falló en el deber que tenía como mandatario de su cliente. P. Ávila Álvarez, *Estudios de Derecho Notarial*, 4ta ed., Madrid, Ed. Montecorvo, 1973, pág. 403. Lo ocurrido denota una negligencia inexcusable y una falta de supervisión sobre el personal clave secretarial, que sirve de auxiliar en el descargo de sus funciones notariales. Si verdaderamente vamos a exigir que la práctica notarial sea de excelencia, no podemos promover semejante laxitud. *In re Salichs Martínez*, 131 D.P.R. 481 (1992). Los errores de las secretarias de un notario no constituyen defensas. *In re Nogueras Cartagena*, 127 D.P.R. 574 (1990).

– O –

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une el Juez Asociado Señor Rebollo López.

Por entender que la sanción impuesta al Lcdo. Wilfredo Rodríguez Mercado es demasiado laxa, disentimos.

Del informe del Comisionado Especial se desprende que el abogado no solamente se tardó casi siete (7) años en presentar unos documentos en el Registro de la Propiedad, sino que suministró información falsa al Procurador General sobre las gestiones realizadas para cumplir con sus deberes éticos hacia su cliente.

Para el 1ro de septiembre de 1988, cuando el querellado recibió la primera carta de la Oficina del Procurador General en que se le informaba de la queja presentada en esa oficina por su cliente, y requiriéndole que expresara su posición por escrito en torno a ésta, ninguno de los tres (3) documentos, para cuya tramitación fue contratado el querellado, había sido inscrito en el Registro de la Propiedad.(¹) De hecho, los documentos no fueron presentados sino hasta el 7 de diciembre de 1989, más de un (1) año después del primer requerimiento de la Oficina del Procurador General.

Sin embargo, el 19 de septiembre de 1988 el querellado escribió a la Oficina del Procurador General y le aseveró que los documentos en cuestión sí habían sido presentados al Registro de la Propiedad para su inscripción. Esa aseveración era falsa y ocasionó perjuicio a su cliente, quien hizo numerosas gestiones infructuosas para comunicarse con el querellado y obtener los boletos de presentación correspondientes, que en realidad no existían.(²)

Ante las circunstancias particulares del caso de autos, no podemos permitir que el abogado incumpla con sus obligaciones éticas amparándose en la excusa de que su secretaria fue la responsable de no presentar los documentos en el Registro de la Propiedad dentro de un término razonable. La indiferencia y el descuido del querellado en torno a los intereses de su cliente demostró un grave menosprecio de sus deberes como abogado bajo los Cánones 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

---

(¹) El primero de los documentos había sido otorgado ante el querellado el 19 de enero de 1983, el segundo el 28 de agosto de 1986 y el tercero el 28 de enero de 1988.

(²) Para el 12 de abril de 1989, cuando la cliente se vio forzada a acudir nuevamente a la Oficina del Procurador General ante lo inútil de sus gestiones para reunirse con el querellado, ya ésta sospechaba que las escrituras nunca se habían presentado. En una tercera carta a esa oficina el 23 de agosto siguiente, ésta informó que la secretaria del querellado le reveló que las escrituras no habían sido presentadas.

Véanse: *In re Rosario*, 116 D.P.R. 462, 467 (1985); *In re Arana Arana*, 112 D.P.R. 838, 844 (1982).

Esos deberes y las responsabilidades que acaecieron no pueden abdicarse tan livianamente como pretende el querellado. La responsabilidad última de la tramitación de los asuntos de un cliente la lleva el abogado. Tampoco podemos ignorar que el notario suministró información falsa a su cliente sobre las gestiones realizadas ante el Registro de la Propiedad, y así relevarlo de sus obligaciones de mantener a su cliente informada del desarrollo del caso. Al proveer información falsa a su cliente sobre el caso encomendado, el abogado incurrió en un incumplimiento craso del Canon 19 del Código de Ética Profesional, *supra.*

Por último, el haber suministrado información falsa tanto a su cliente como a la Oficina del Procurador General, es patentemente contrario al decoro y a la honestidad con que debe llevarse la profesión legal, y a todas luces contraviene el Canon 26 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Véanse: *In re Ramos y Ferrer*, 115 D.P.R. 409 (1984); *Alonso García v. Comisión Industrial*, 102 D.P.R. 752, 755 (1974).

Por cuanto antecede, suspenderíamos al querellado del ejercicio de la notaría por el término de un (1) año.