EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Nilsa L. García Cabrera | 2019 TSPR 36 <br><br> 201 DPR \_\_\_\_ |

Número del Caso: AB-2015-302


Fecha: 25 de febrero de 2019


Abogado de la parte promovida:

     Por derecho propio


Procurador General Auxiliar:

     Lcda. Karla Z. Pacheco Alvarez
     Subprocuradora General

     Lcdo. Joseph Feldstein del Valle
     Subprocurador General

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General


 Oficina de Inspección de Notarías:

     Lcdo. Manuel E. Ávila de Jesús
     Director


Materia: Conducta Profesional – La suspensión de la notaría será efectiva el 28 de febrero de 2019. Fecha en que se le notificó a la abogada de su suspensión inmediata del ejercicio de la notaría.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re:* <br><br> *Nilsa L. García Cabrera* <br> (TS-9,942) | AB-2015-302 |  |

**PER CURIAM**

En San Juan, Puerto Rico, a 25 de febrero de 2019.

Tenemos que ejercitar nuestro poder disciplinario para suspender a la Lcda. Nilsa L. García Cabrera (licenciada García Cabrera o letrada) indefinidamente del ejercicio de la notaría.[1]

Veamos los elementos fácticos que dieron lugar a nuestro proceder.

**I**

En el 2006 la licenciada García Cabrera fue contratada para fungir como notaria en la compraventa de un inmueble ubicado en el pueblo de Cidra. Asimismo, esta se comprometió a realizar los trámites necesarios para la presentación e inscripción del referido negocio en el Registro de la Propiedad.

El 26 de agosto de 2015 el Sr. Victor Báez Oyola (señor Báez Oyola) y la Sra. Mirta I. Garced Pérez (en conjunto, los

---

[1] La licenciada García Cabrera fue admitida al ejercicio de la abogacía el 13 de enero de 1992 y a la práctica de la notaría el 24 de febrero de 1993.

quejosos) instaron una queja contra la letrada. Señalaron que el 21 de octubre de 2006 esta autorizó la escritura *Número Once, Compraventa* (Escritura de Compraventa), en la cual comparecieron como compradores del bien inmueble. Apuntaron que los vendedores de la propiedad eran los herederos del Sr. Marcelino Carrero Rivera y la Sra. Lutgarda Rivera Rivera. No obstante, al otorgamiento de la escritura no comparecieron varios de los herederos. Expresaron que, pasados seis años de haber otorgado la referida escritura, como parte de los trámites posteriores al divorcio y de la liquidación de los bienes gananciales de ambos, intentaron vender el inmueble en cuestión. Sin embargo, la persona interesada retiró su oferta puesto que se percató de que los quejosos no figuraban como titulares del inmueble en el Registro de la Propiedad. Manifestaron que, luego de este suceso, el señor Báez Oyola inquirió a la letrada la razón por la cual el negocio jurídico aún no constaba inscrito. Por otro lado, indicaron que en el 2012 la licenciada García Cabrera autorizó el instrumento público que denominó *Escritura Treintisiete, Acta de Rectificación y de Ratificación de Compraventa* (Escritura de Ratificación), pero que a su otorgamiento tampoco compareció uno de los miembros de las sucesiones vendedoras, a saber, el Sr. Florindo Carrero Román (señor Carrero Román), por lo que faltaba que este ratificara la compraventa. Arguyeron que la letrada no los mantenía informados de las gestiones que realizaba, por lo que tuvieron que contratar a una abogada, la Lcda. Hilda E. Colón Rivera, para que se comunicara con la

licenciada García Cabrera e investigara el estado registral de la propiedad inmueble. Señalaron que en el 2014 la licenciada Colón Rivera solicitó a la letrada el poder del señor Carrero Román y se efectuaron varios esfuerzos para obtener un poder otorgado por este, los que resultaron infructuosos porque siempre contenían errores. Ante la imposibilidad de obtenerlo, se vieron precisados a demandar al señor Carrero Román. Alegaron que, como producto de ese proceso legal, el tribunal ordenó a un alguacil a firmar la escritura en lugar del señor Carrero Román. Ahora bien, apuntaron que luego de ese suceso intentaron comunicarse y reunirse con la licenciada García Cabrera, pero no tuvieron éxito. A esos efectos, la citaron a una reunión a la que no compareció, ni se comunicó para excusarse, y que no respondió comunicaciones posteriores. Arguyeron que nunca se les advirtió que la inscripción de la compraventa podía tardar diez años.

El 12 de noviembre de 2015 la letrada contestó la queja. Entre otras cosas, aseveró que los quejosos le hicieron el acercamiento inicial para adquirir una propiedad perteneciente a la sucesión del Sr. Marcelino Carrero Rivera, quien dejó un testamento, y la Sra. Lutgarda Rivera Rivera, quien murió intestada. Así pues, señaló que la contrataron para realizar los trámites pertinentes y autorizar el instrumento público. Indicó que procedió a orientar a ambas partes de las gestiones que debían llevarse a cabo, ya que, entre otras cosas, la Sra. Lutgarda Rivera Rivera había

fallecido intestada y los herederos no habían hecho ningún trámite. Manifestó que antes de que se otorgara la Escritura de Compraventa explicó a los quejosos que, como se desconocía el paradero de dos de los herederos, era necesario localizarlos para que ratificaran la compraventa. Apuntó que, a pesar de advertirles de que no era conveniente adquirir la propiedad en esas condiciones, las partes insistieron en efectuar el negocio. Sostuvo que procedió con los trámites, para lo cual obtuvo la declaratoria de herederos de la Sra. Lutgarda Rivera Rivera, los poderes de los herederos que estaban fuera de Puerto Rico y, posteriormente, se efectuó la compraventa.[2] Recalcó que siempre advirtió a los quejosos sobre las características y de la situación real del inmueble, así como todos los trámites y las gestiones que tenían que completarse antes de poder inscribir la titularidad de los quejosos. Esbozó que en el acto del otorgamiento les apercibió que la compraventa no podría inscribirse hasta que los demás herederos ratificaran el negocio y se inscribiera el derecho hereditario de la parte vendedora, todo lo cual podía tomar mucho tiempo.

Por otro lado, la letrada expuso que presentó las Planillas de Caudal Relicto en el Departamento de Hacienda para obtener el correspondiente Certificado de Cancelación de Gravamen y tramitó el cambio de dueño en el Centro de Recaudación de Ingresos Municipales (CRIM). Además, aseveró

---

[2] Véase los Anejos IV y V del Informe de la Oficina de Inspección de Notarías (ODIN).

que el señor Báez Oyola visitó su oficina en el 2011 para conocer el estado del asunto; que en ese momento le explicó los tramites efectuados y el proceso restante, y que no había podido presentar la escritura porque no podía localizar al vendedor encargado. Esta indicó que estuvo hasta 2012 realizando gestiones para localizar a los herederos restantes, quienes no habían comparecido al otorgamiento de la Escritura de Compraventa. Arguyó que ese año pudo obtener los poderes de dos de los herederos que faltaban por ratificar el negocio —el del Sr. Marcelino Carrero Becerril y la Sra. Milagros Carrero— y que llevó a cabo múltiples intentos para obtener un poder válido de parte del señor Carrero Román. En el caso de este último persistían errores o los poderes estaban incompletos. Entonces, procedió a autorizar la Escritura de Ratificación, restando la ratificación del señor Carrero Román. Afirmó que siempre informó al señor López Rivera y al quejoso sobre las consecuencias legales de la falta de ratificación de la compraventa. Además, señaló que previamente —en el 2012— cuando requirió la suma de $ 535 para presentar las instancias de Derecho Hereditarios ante el Registro de la Propiedad, el Sr. Samuel Gerardo López Rivera (señor López Rivera), también heredero y quien fungió como representante de varios de los vendedores, solicitó tiempo porque no contaba con el dinero.

La licenciada García Cabrera argumentó que fue por recomendación suya que los quejosos demandaron al señor

Carrero Román, pero que no pudo obtener una copia certificada de la sentencia del Tribunal de Primera Instancia, en la cual se ordenó al Alguacil del tribunal que suscribiera una escritura o acta de ratificación en lugar de este. Ello, porque no fue la abogada en el caso. Asimismo, como la decisión fue apelada, decidió esperar el dictamen del foro apelativo. Manifestó que en el 2015 únicamente recibió una copia simple, no certificada, de la sentencia del Tribunal de Apelaciones.

La letrada sostuvo que durante ese periodo, y con posterioridad, el señor López Rivera no le contestó el teléfono ni respondió a varias cartas que le remitió, por lo que no logró comunicarse con este para que juramentara las instancias de derechos hereditarios. Admitió que fue citada a una reunión con la licenciada Colón Rivera, pero que no pudo asistir porque en ese momento tenía un juicio de asesinato por jurado. Confesó que falló en no informarle a esta sobre las gestiones que estaba realizando. Expresó que advino en conocimiento del interés de los quejosos de que otra abogada culminara el proceso de inscripción en el Registro de la Propiedad a través de la queja.

Así las cosas, alegó que la propiedad no estaba inscrita en el Registro de la Propiedad porque algunos miembros de las sucesiones Carrero Rivera y Rivera Rivera no habían suscrito y juramentado las instancias de los derechos hereditarios, ni provisto los aranceles para su presentación. Finalmente, señaló que no contaba con ningún documento original que

perteneciera a los quejosos y que estaba en la disposición de emitir las copias certificadas de los instrumentos públicos que interesen, previo al pago de los aranceles correspondientes.

Los quejosos replicaron la contestación a la queja. En síntesis, argumentaron que la letrada ocasionó el retraso en el trámite de los asuntos. Reiteraron que la licenciada García Cabrera nunca les informó que los trámites podían tardar diez años. Asimismo, arguyeron que dieron dinero a la letrada en dos ocasiones para que comprara los sellos que esta indicaba que faltaban.

El 6 de octubre de 2016 el director de la Oficina de Inspección de Notarías (ODIN), el Lcdo. Manuel E. Ávila De Jesús, presentó su *Informe*. Destacó que la licenciada García Cabrera se obligó contractualmente a instrumentar la escritura de compraventa del inmueble; tramitar la inscripción de los derechos hereditarios de los vendedores, y presentar en el Registro de la Propiedad los documentos que acreditaban los derechos hereditarios y el negocio de la compraventa. Explicó que la inscripción de la compraventa estaba condicionada a la inscripción de los derechos hereditarios de los integrantes de las sucesiones de Carrero Rivera y Rivera Rivera. Resaltó que la Escritura de Compraventa contenía defectos sustanciales que constituían una violación a la fe pública notarial, así como a los Arts. 2, 14, 15(f) y 39 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA secs. 2002,

2032, 2033(f) y 2061, respectivamente; la Regla 49 del Reglamento Notarial de Puerto Rico; y los Cánones 12, 18, 19, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

En particular, la ODIN estimó que la letrada faltó a su deber de sinceridad y honestidad, lo cual era contrario a la fe pública notarial: *primero*, señaló que la licenciada García Cabrera consignó en la escritura de compraventa una realidad inexistente, toda vez que esbozó que autorizó una escritura de partición de la herencia para los vendedores; *segundo*, plasmó que los vendedores entregaron a los quejosos copia certificada de la escritura de partición, hecho que no pudo acontecer porque la partición de la herencia no se había efectuado; y, *tercero*, consignó que la parte vendedora era dueña en pleno dominio de la propiedad. Además, sostuvo que la licenciada García Cabrera no advirtió en la escritura que al otorgamiento no comparecieron todos los titulares del inmueble, ni sobre la necesidad de que el negocio jurídico se ratificara por los demás titulares que no habían comparecido para que este fuera eficaz. En lo referente a la Escritura de Ratificación, el director de la ODIN reconoció que la letrada consignó de manera distinta a lo dispuesto en la Escritura de Compraventa uno de los elementos esenciales para la validez del negocio jurídico. Específicamente, explicó que

> [e]n esta se describió el pago del precio convenido de $125,000.00 en cuatro pagos parciales, siendo el último de estos por $24,729.30 para saldar la hipoteca que gravaba la propiedad. Se especificó que los restantes $98,800.28 se le entregaron a la Parte Vendedora en el acto del otorgamiento. No obstante, en la Escritura Núm. 37 de 2012 se aclaró

que los compradores se reservaron la cantidad de $98,800.28 para el pago de la hipoteca que gravaba la propiedad. Es decir, **en la Escritura Núm. 11 de 2006 la Querellada instrumentó el negocio jurídico y afirmó bajo su fe pública notarial que en el acto del otorgamiento la Parte Compradora entregó a la Parte Vendedora $98,800.28, cuando eso no fue lo que ocurrió.** (Énfasis en el original).[3]

Apuntó que en ambos instrumentos, a pesar de que la licenciada García Cabrera hizo constar que cinco vendedores estaban representados, se incluyeron las iniciales de algunos de estos al margen de los folios. Asimismo, que al final de la Escritura de Compraventa aparecen los nombres o las firmas de tres de esos vendedores que presuntamente fueron representados por el señor López Rivera. Aseveró que en la Escritura de Ratificación, igualmente, aunque se expresó que los cinco integrantes de la sucesión estaban representados, aparecían las firmas y las iniciales de estos en los márgenes de cada folio. También, la ODIN expresó que la letrada dio fe de haber expedido una copia certificada de la Escritura de Ratificación a una persona que no compareció como otorgante del instrumento público.

Por otro lado, la ODIN determinó que la licenciada García Cabrera faltó a su deber de diligencia y competencia al no tramitar de forma diligente la inscripción de los derechos hereditarios de los vendedores. Arguyó que la justificación de la letrada para su demora, que no lograba conseguir al señor López Rivera para que firmara las instancias de los derechos hereditarios y que se demoraron en pagar los derechos

---

[3] Informe, pág. 26.

de presentación e inscripción de los documentos, no era válida. *Primero*, enfatizó que la licenciada García Cabrera acordó que cobraría por el trámite de la declaratoria de herederos y por los poderes una vez se consumara la compraventa. *Segundo*, no justificó válidamente no haber presentado la instancia en el Registro de la Propiedad, pues el Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario), Reglamento Núm. 2674, según enmendado, permitía que fuera suscrita por ella. En ese sentido, estimó que la letrada podía presentar la instancia, sin que fuera necesaria la firma de algún miembro de la sucesión, y que al autorizar la escritura debió reservarse los aranceles necesarios para su posterior inscripción. Asimismo, señaló que el documento que restaba para protocolizar el poder del señor Carrero Román era la legalización del mismo ante un *County Clerk*, gestión que podía efectuar la licenciada García Cabrera.

El director de la ODIN recomendó suspender a la letrada del ejercicio de la notaría por un término de seis meses. Concluyó que su proceder demostraba desconocimiento de las normas que gobiernan la práctica de la notaría; que no se condujo con diligencia, ya que habían transcurrido diez años sin presentar los documentos al Registro de la Propiedad; que incumplió con su deber de mantener informados a los otorgantes de los asuntos relevantes, y que en los instrumentos consignó hechos contrarios a la verdad. Sugirió que ordenáramos a la licenciada García Cabrera culminar, a su costo, el proceso de

presentación del negocio jurídico ante el Registro de la Propiedad. Finalmente, expuso que habían ciertas actuaciones de esta que debían ser investigadas a profundidad por la Oficina del Procurador General, a los fines de identificar si infringió disposiciones éticas, legales o reglamentarias adicionales.[4]

Tras evaluar el informe de la ODIN, acogimos su recomendación de remitir el asunto al Procurador General. De igual manera, concedimos un término a la letrada para que se expresará sobre el informe presentado por la ODIN.

El 2 de febrero de 2017 la licenciada García Cabrera presentó una *Moción en cumplimiento de orden y Moción responsiva a informe de ODI[N].* En esta esbozó argumentos muy similares a los de su contestación a la queja. Entre otras cosas, alegó que la tardanza no fue producto de su dejadez, negligencia, ni resultado del desconocimiento del Derecho. Argumentó que su inexperiencia en aquel momento no le permitió anticipar que el asunto podía hacerse complejo. Expresó que la obra protocolar de 2006 había sido aprobada por la ODIN en el 2012 sin que se señalaran las deficiencias que se imputaban en el informe. Además, reiteró que autorizó la Escritura de Compraventa por la insistencia de los compradores. En cuanto a las instancias de los derechos hereditarios de las

---

[4] Expuso que estos podían implicar infracciones a los Arts. 2, 15(e), 18, 41 y 43 de la Ley Notarial, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA secs. 2002, 2033(e), 2036, 2063 y 2065, respectivamente; la Regla 47 del Reglamento Notarial, y varios Cánones del Código de Ética Profesional, 4 LPRA Ap. IX.

sucesiones, sostuvo que no las había presentado porque no le habían pagado los aranceles correspondientes. Empero, expuso que para culminar con la controversia, aunque no le correspondía había suplido estos costos y el 1 de febrero de 2017 presentó las instancias al Registro de la Propiedad.[5]

Ahora bien, por primera vez señaló que el acta de ratificación del señor Carrero Román no podía otorgarse porque el foro primario no emitió una orden de ejecución de la sentencia junto con esta y el mandamiento, lo cual era indispensable. Es decir, el trámite no se había logrado dado que faltaba la orden de ejecución del tribunal de instancia para que la Alguacil firmara el instrumento público en lugar del señor Carrero Román. Indicó que notificó este hecho a la licenciada Colón Rivera, quien representó a los quejosos en el pleito contra el señor Carrero Román.

El 9 de marzo de 2017 recibimos el *Informe del Procurador General*, quien coincidió con los hallazgos de la ODIN. Concluyó que, en efecto, la licenciada García Cabrera hizo constar en la Escritura de Compraventa hechos falsos. Entre otras cosas, expuso que en la referida escritura pública se consignó que los comparecientes como la "parte vendedora" eran dueños en pleno dominio del inmueble, pero, por ejemplo, el Sr. Marcelino Carrero Becerril y la Sra. Milagros Carrero Becerril, quienes no comparecieron en la Escritura de

---

[5] Véase *Recibo de presentación* en el Apéndice de la *Moción en cumplimiento de orden y Moción responsiva a informe de ODI[N]*, págs. 234-237.

Compraventa, también eran codueños y miembros de la sucesión del Sr. Marcelino Carrero Rivera. Además, señaló que la Escritura de Compraventa hacía referencia a otro instrumento público sobre partición de herencia que presuntamente se había otorgado ante ella. Empero, en la Escritura de Ratificación se negó la existencia de ese instrumento. Asimismo, esbozó que la Escritura de Compraventa y Escritura de Ratificación se contradecían en cuanto al pago del inmueble; en una se expresó que la parte compradora entregó a la parte vendedora la cantidad de $ 98,800.28, mientras que en la otra se hizo constar que la parte se reservó esa cantidad para el pago de la hipoteca. Asimismo, el Procurador General concurrió con la ODIN respecto a la ausencia de ciertas advertencias a los otorgantes. Concluyó, finalmente, que la licenciada García Cabrera no fue diligente ni competente en la gestión profesional en contravención a los Cánones 12 y 18 de Ética Profesional. Entendió que esta tampoco mantuvo una comunicación efectiva con los quejosos, por lo cual infringió el Canon 19 de Ética Profesional.[6]

Ahora bien, la Oficina del Procurador General estimó que no había evidencia para rebatir la dación de fe de la letrada en cuanto a cuáles vendedores fueron representados por el señor López Rivera. Además, entendió menester resaltar que la

---

[6] La oficina del Procurador General concluyó que "la licenciada García Cabrera pudo incurrir en infracciones al Artículo 12, 14, 15(e), 39 y 41 de la Ley Notarial, la Regla 49 del Reglamento Notarial y a los Cánones 12, 18, 19, 35 y 38 de Ética Profesional". *Informe del Procurador General*, pág. 25.

licenciada García Cabrera sometió copia de las instancias presentadas en 1 de febrero de 2017 para la inscripción de la propiedad a nombre de la sucesión y que, para ello, pagó los aranceles necesarios conforme recomendó la ODIN.

El 4 de abril de 2017 emitimos una resolución en la cual ordenamos a la letrada que se expresara en cuanto al *Informe del Procurador General.* Luego de varias solicitudes de prórroga, el 1 de junio de 2017 la licenciada García Cabrera presentó una *Moción en cumplimiento de resolución* a la que adjuntó amplia prueba documental. Allí, esbozó las gestiones que llevó a cabo a los fines de lograr la inscripción de la escritura. Particularmente, sobre las diligencias para obtener la ratificación del señor Carrero Román, manifestó que el 1 de febrero de 2017 indicó al señor Báez Oyola que solicitara a su abogada que cumpliera con los requerimientos de la Oficina de Alguaciles para poder autorizar el acta de ratificación, pero que no obtuvo respuesta. A esos efectos, reiteró que se reunió con una alguacil del tribunal de instancia y esta le comunicó que, además de la sentencia y el mandamiento del tribunal, necesitaba una orden de ejecución. Arguyó que se comunicó con la licenciada Colón Rivera, quien le expresó que el señor Báez Oyola no contestó por instrucciones suyas. Asimismo, enumeró los costos que tuvo que sufragar para tramitar la inscripción del título de los quejosos en el Registro de la Propiedad. Sostuvo que se ha esforzado durante años para completar los trámites necesarios de inscripción en beneficio de sus clientes. Aceptó haber

fallado en su obligación de mantenerlos informados en todo momento. Empero, arguyó que la medida disciplinaria recomendada era muy severa, pues en otros casos hemos impuesto sanciones menores. Para ello hizo referencia a *In re Maldonado Maldonado,* 197 DPR 802 (2017); *In re Pagán Pagán,* 171 DPR 975 (2007), e *In re Rodríguez Mercado*, 133 DPR 208 (1993).

El 15 de junio de 2017 los quejosos presentaron un escrito que titularon *Moción*. Allí, entre otras cosas, reconocieron que la letrada ha realizado gestiones para inscribir el inmueble en el Registro de la Propiedad. Sin embargo, señalaron que la Escritura de Compraventa aún no contaba con la ratificación del señor Carrero Román. Estiman que, por esa razón, el Registrador de la Propiedad notificará esta deficiencia. Es por ello que solicitaron que ordenemos a la letrada que pruebe cómo ratificó la escritura el heredero que no compareció.[7]

A continuación enunciamos el marco legal que aplica a este caso.

## II

Como parte de nuestro poder inherente para regular la profesión de la abogacía, nos compete asegurarnos que los miembros admitidos a la profesión de la abogacía, así como la notaría, ejerzan sus funciones de manera responsable,

---

[7] Manifestaron, también, que la licenciada García Cabrera les remite las comunicaciones, a pesar de contar con representación legal. Por tal razón, solicitan que ordenemos a la letrada que toda comunicación sobre los trámites de inscripción de la propiedad sea cursada a través de su representante legal.

competente y diligente.[8] En el escenario de los notarios, estos están obligados a cumplir con la Ley Notarial y su Reglamento, el Código de Ética Profesional y las leyes que aplican a los documentos que autorizan.[9]

Los notarios ejercen una función pública mediante la cual dan fe y autentican de acuerdo a las leyes los negocios jurídicos y los actos o sucesos extrajudiciales que se realizan ante ellos.[10] Así, estos ostentan la custodia de la fe pública notarial, elemento indispensable y principal de todo el modelo de autenticidad documental notarial.[11]

Por ello, la función pública que ejercen estos funcionarios va más allá de un legalizador de firmas autómata. Es que su oficio trasciende "al campo de la legalidad de la transacción que ante él se concreta".[12] Este conlleva, en efecto, el deber inquebrantable de cerciorarse que el "instrumento público cumple con todas las formalidades de la ley, que es legal y verdadero, y que es una transacción

---

[8] *In re Oyola Torres*, 194 DPR 437 (2016); *In re Vera Vélez*, 192 DPR 216, 226 (2015). El Código de Ética Profesional establece las normas mínimas de conducta que deben desplegar los abogados que ejercen esta ilustre profesión. *In re Rodríguez Gerena*, 2017 TSPR 40, 197 DPR ___ (2017); *In re Guemárez Santiago*, 191 DPR 611, 617-618 (2014); *In re Falcón López*, 189 DPR 689 (2013).

[9] *In re Toro González II*, 193 DPR 877, 888 (2015); *In re Vargas Velázquez*, 193 DPR 681, 693 (2015).

[10] *In re Maldonado Maldonado,* 197 DPR 802, 809 (2017). Véase Art. 2 de la Ley Notarial de Puerto Rico, (Ley Notarial), Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2002.

[11] *In re Maldonado Maldonado,* supra, pág. 809; *In re Belén Trujillo,* 184 DPR 793, 801 (2012).

[12] Íd., citando a *In re Torres Alicea*, 175 DPR 456, 460 (2009).

legítima y válida".[13] Es decir, según dispone el Art. 2 de la Ley Notarial, supra, el cual recoge el principio de la fe pública notarial, los notarios tienen la "función [de] recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos". Consiguientemente, como estos aseguran que la transacción es válida, legal, verdadera y legítima; la función notarial debe ejercerse con la mayor pureza, honestidad, cuidado, esmero, diligencia y estricto celo profesional.[14] La importancia de la fe pública notarial no permite que esta se desempeñe de otra manera.[15]

Acorde con este principio el Canon 35 del Código de Ética Profesional, *supra*, resalta los principios de sinceridad y honradez que deben permear la profesión de la abogacía. Al así hacerlo, dispone que "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada".[16] Además, establece que "[n]o es sincero ni honrado el utilizar medios que sean [incompatibles] con la

---

[13] *In re Torres Alicea,* supra, pág. 460. Véase, además, Art. 14 de la Ley Notarial, supra, 4 LPRA sec. 2032. El deber de cerciorarse de que los actos y negocios jurídicos que se realizan ante el notario cumplan con las normas legales vigentes está vinculado al deber de diligencia que impone el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX.

[14] *In re Maldonado Maldonado*, supra, pág. 809. Véanse, además: *In re Toro González II,* supra, pág. 888; *In re Pacheco Pacheco*, 192 DPR 553, 562 (2015); *In re Belén Trujillo,* supra, pág. 801; *In re Feliciano Ruiz,* 117 DPR 269 (1986).

[15] *In re García Cabrera,* 188 DPR 196, 209-210 (2013).

[16] Canon 35 del Código de Ética Profesional, supra.

verdad ni […] inducir […] a error utilizando artificios o una falsa relación de los hechos o del derecho".[17]

Nótese que este precepto ético compele a los abogados a desplegar la profesión con sinceridad y honradez, tanto en su labor de abogado como en su función notarial.[18] Así pues, hemos resuelto que "faltar a la veracidad de los hechos es una de las omisiones más graves que puede cometer un notario".[19] Esto nos ha llevado a rechazar como defensa cualquier planteamiento sobre falta de deliberación, mala fe, intención de engañar o defraudar, o sobre la ausencia de perjuicio a un tercero.[20] Es que este precepto ético se fundamenta en que "[l]a verdad es una cualidad ínsita e inseparable del ejercicio de la abogacía".[21] En ese sentido, certificar o dar fe de un hecho falso por aquellos que ejercen la notaría es actuar en detrimento al referido precepto ético y, también, quebrantar la fe pública notarial que estos funcionarios están llamados a custodiar.[22]

El proceso de autenticar y otorgar instrumentos públicos válidos es el producto neto de que los notarios cumplan fiel y cabalmente con "los requisitos de la ley notarial referentes a la comparecencia, exposición, estipulación, otorgamiento y autorización" para cada negocio jurídico en que estos

---

[17] Íd.

[18] *In re Belén Trujillo,* supra, pág. 802.

[19] Íd; *In re Pagani Padró,* 198 DPR 812, 823 (2017).

[20] *In re Feliciano Rodríguez,* 298 DPR 369, 385 (2017)

[21] Íd.; *In re Ramírez Salcedo*, 196 DPR 136, 148 (2016).

[22] *In re Belén Trujillo,* supra, pág. 802.

intervienen.[23] La Ley Notarial establece como requisito que los notarios expresen en los instrumentos públicos en qué calidad intervienen los otorgantes, ya sea si comparecen en nombre propio o en representación de otra persona o grupo de personas.[24]

Cuando el compareciente actúa en nombre propio, la regla general es que no se requiere alguna declaración especial.[25] En cambio, si comparece al otorgamiento del instrumento público un representante de alguna persona, hemos reiterado que es indispensable acreditar la capacidad representativa del representante-compareciente.[26] En este último supuesto, es preciso que el notario consigne en el instrumento público el nombre, la cualidad de representante, el carácter de la representación y la prueba que lo acredita.[27] En cuanto a este último requisito, el instrumento público que se otorgue debe expresar el tipo de documento que el notario tuvo ante sí, la fecha del documento y el nombre del notario autorizante.[28]

---

[23] *Sucn. Santos v. Registrador*, 108 DPR 831, 834 (1979).

[24] Art. 18 y 19 de la Ley Notarial, 4 LPRA secs. 2036 y 2037. Véanse, además: Reglas 27 y 28 del Reglamento Notarial, supra.

[25] *Rodríguez Vidal v. Benvenutti*, 115 DPR 583, 589 (1984).

[26] Art. 19 de la Ley Notarial, 4 LPRA sec. 2037 ("Todo otorgante que comparezca en representación de otra persona deberá siempre acreditar ante el notario su designación con los documentos fehacientes, salvo que exista la conformidad expresa de los otorgantes. La eficacia plena de la escritura quedará subordinada a la presentación de prueba documental de la representación alegada"); *In re Rodríguez Mangual*, 172 DPR 313, 317 (2007); *Rodríguez Vidal v. Benvenutti*, supra, pág. 587. Véase la Regla 27 del Reglamento Notarial, supra.

[27] Art. 19 de la Ley Notarial, 4 LPRA sec. 2037.

[28] Regla 28 del Reglamento Notarial, supra.

Por otro lado, la Ley Notarial, supra, dispone que "[l]os que suscriban un instrumento público en cualquier concepto, lo ha[g]an firmando al final y estampando las iniciales de su nombre y apellido o apellidos al margen de todos los folios".[29] Esta aclara que quien comparece como "representante suscribirá el documento con su propia firma sin que sea necesario que anteponga el nombre de su representado, ni use la firma o razón de la entidad que represente".[30]

Como parte del contenido de los negocios jurídicos que recaen sobre inmuebles, hemos establecido que el notario debe incluir toda la información relacionada con la descripción registral del bien objeto del negocio, su inscripción, su titularidad, sus antecedentes pertinentes, si está gravada, y la relación de las cargas y los gravámenes.[31] Asimismo, el Art. 15 de la Ley Notarial, supra, establece una serie de requisitos que debe contener todo instrumento público, además de aquellos relativos al negocio jurídico que motiva su otorgamiento, sus antecedentes y los hechos presenciados y consignados por el notario. Entre ellos, el inciso (e) dispone que el notario debe dar fe expresa del conocimiento personal de los otorgantes o, en su defecto, que se aseguró de su identidad por los medios establecidos por la propia ley. Además, entre otras cosas, este instituye que debe consignar que los otorgantes "tienen la capacidad legal necesaria para

---

[29] Art. 28 de la Ley Notarial, supra, 4 LPRA sec. 2046.

[30] Íd., Art. 18 (4 LPRA sec. 2036).

[31] *In re Godinez Morales,* 161 DPR 219, 247 (2004).

otorgar el acto o contrato de que se trata".[32] Respecto a la dación de fe del conocimiento de los otorgantes, hemos señalado que esta constituye una garantía de que la persona que firma es quien dice ser.[33] Esto no es otra cosa que una forma de que el notario indague sobre los hechos y datos de los que depende la eficacia y validez del instrumento que autoriza.[34] Es que sin el consentimiento de quien está llamado a brindarlo no se lograría la validez y eficacia jurídica del negocio en cuestión.[35] Como consecuencia, las averiguaciones mínimas que debe realizar el notario se extienden hasta que esté convencido de la capacidad de los otorgantes desde el inicio del otorgamiento de la transacción hasta el final.[36]

Los notarios tienen cuatro obligaciones esenciales al autorizar una escritura pública, a saber:

> […] 1. indagar la voluntad de los otorgantes; 2. formular la voluntad indagada; 3. investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio; 4. darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo. (Corchetes en el original omitidos y comillas omitidas).[37]

---

[32] Art. 15(e) de la Ley Notarial, supra, 4 LPRA sec. 2033(e).

[33] Sabido es que el negocio jurídico celebrado a nombre de otro por quien no esté autorizado es nulo, salvo que la persona a cuyo nombre se otorgue lo ratifique. *In re González Maldonado*, 152 DPR 871, 908 (2000).

[34] *Chévere v. Cátala*, 115 DPR 432, 438 (1984).

[35] Art. 1211 del Código Civil de Puerto Rico, 31 LPRA sec. 3376; *In re Martínez Almodóvar,* 180 DPR 805, 816 (2011).

[36] Íd., pág. 829.

[37] *In re Belén Trujillo,* supra, pág. 803, citando a *Chévere v. Cátala*, 115 DPR 432, 438 (1984).

Precisamente, el Art. 15(f) de la Ley Notarial, *supra*, requiere que el notario realice "de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes".[38] De esta forma se asegura de que estos concurren al acto del otorgamiento en un estado de conciencia informada.[39] Es decir, así se percata de que los otorgantes comprenden el sentido, los efectos y los riesgos o consecuencias del negocio jurídico.[40]

El Art. 15(f), supra, además, impone al notario el deber de consignar en la escritura pública "aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente".[41] A pesar de que mediante legislación se establecen una serie de advertencias que deben contener ciertos negocios, el notario debe utilizar el derecho positivo y la jurisprudencia, así como considerar el contenido del negocio y las estipulaciones que se suscribirán, al momento de decidir qué advertencias debe realizar y hacer constar en el instrumento público.[42] En otros términos, para determinar cuáles aclaraciones y advertencias se deben consignar, es indispensable un análisis integral del derecho que aplica al acto o negocio que autoriza.[43] Esta es

---

[38] 4 LPRA sec. 2033(f).

[39] *In re Belén Trujillo,* supra, pág. 804.

[40] Íd.

[41] 4 LPRA sec. 2033(f).

[42] *In re Maldonado Maldonado*, supra, pág. 811; *In re Palmer Ramos,* 195 DPR 245, 256 (2016); *In re Toro González*, supra, págs. 888-889.

[43] *In re Toro González II*, supra, pág. 890.

la forma en que los notarios pueden salvaguardar su responsabilidad, pues el incumplimiento con efectuar una advertencia importante y necesaria ─conforme los parámetros mencionados─ aparte de infringir el Art. 15(f), supra, constituye una violación al imperativo de custodiar la fe pública notarial.[44]

Por otra parte, el Canon 12 del Código de Ética Profesional, *supra*, impone el deber a los abogados de ser "conciso[s] y exacto[s] en el trámite y presentación de las causas". Para cumplir con esa obligación, en el referido canon se consignó que los abogados deben "desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución".[45] En vista de ello, reiteradamente hemos reconocido que este precepto impone a los abogados el deber de ser puntuales, responsables y diligentes en la tramitación de las causas.[46]

Cónsono con lo anterior, el Canon 18 del Código de Ética Profesional, *supra*, establece la obligación de la clase togada de desplegar "en cada caso su más profundo saber y habilidad y actua[r] en aquella forma que la profesión

---

[44] *In re Ayala Oquendo,* 185 DPR 572, 581 (2012). Ello, con independencia de que esa haya sido o no la intención del notario. Íd. Como obligación impuesta por ley, la inobservancia con este requisito es, a su vez, una violación al Art. 2 de la Ley Notarial, supra, el cual exige a todo notario el cumplimiento con sus preceptos. *In re Muñoz Fernós,* 184 DPR 679, 684 (2012).

[45] Canon 12 del Código de Ética Profesional, 4 LPRA Ap. IX.

[46] *In re Maldonado Maldonado,* supra, pág. 812; *In re Nazario Díaz,* 195 DPR 623, 625 (2016); *In re Hernández González,* 188 DPR 721, 727 (2013).

jurídica en general estima adecuada y responsable". Dispone que "un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia".[47] Por tanto, este canon exige al abogado rendir una labor idónea de competencia y diligencia, por lo que pauta un principio que —indiscutiblemente— condena la desidia, la despreocupación y la displicencia de los asuntos encomendados al abogado.[48] Hemos reconocido que estos parámetros aplican a los abogados en su función notarial y les exige, coetáneamente con la Ley Notarial y su reglamento, cerciorarse de que los actos y negocios jurídicos que autorizan cumplan cabalmente con las normas legales pertinentes.[49]

En *In re Maldonado Maldonado*, supra, pág. 813, al hacer referencia a *In re Ayala Oquendo,* 185 DPR 572 (2012), y otros casos, reiteramos que un abogado-notario infringe el Canon 18 del Código de Ética Profesional, *supra*, cuando viola las disposiciones de la Ley Notarial. Al citar a *In re Aponte Berdecía*, 161 DPR 94, 106 (2004), expresamos que "una vez un notario contraviene la ley vigente, incurre en una práctica notarial indeseable y contraviene el canon mencionado".[50] De

---

[47] Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX.

[48] *In re Maldonado Maldonado*, supra, pág. 812.

[49] Íd. Véase, además, *In re Vargas Velázquez*, supra, págs. 694-695.

[50] *In re Maldonado Maldonado*, supra, pág. 813. No puede perderse de perspectiva que "[e]l desconocimiento de las normas jurídicas y del ejercicio de la profesión vulneran [sic] la

igual manera, hicimos alusión a *In re Pacheco Pacheco*, 192 DPR 553, 564 (2015), a los efectos de que "el notario queda compelido a ejercer diligentemente su función […] hasta cerciorarse de que el instrumento público no posee defectos que impidan su inscripción en el Registro de la Propiedad".[51] Recalcamos que el incumplimiento con esta norma se traduce en una violación a los cánones del Código de Ética Profesional, que amerita el ejercicio de nuestra facultad inherente de regular la profesión de la abogacía y, por ende, la imposición de medidas disciplinarias. Acorde con esto, al revisitar *In re Vargas Velázquez*, 193 DPR 681, 694-695 (2015), reafirmamos que se infringe el Canon 18 del Código de Ética Profesional, *supra*, al presentar al Registro de la Propiedad una escritura de partición de herencia sin cerciorarse de que el derecho hereditario estuviese inscrito.

No cabe duda de que nuestro ordenamiento no le impone la obligación a los notarios de presentar los documentos que autoriza en el Registro de la Propiedad. Solo cuando este acuerda que los presentará es que surge un vínculo contractual ajeno a la responsabilidad ordinaria e inherente del ejercicio de la notaría.[52] El notario que realiza este convenio y recibe la cuantía correspondiente para el pago de

---

naturaleza misma del notariado en nuestra jurisdicción y constituyen [sic] una violación al Canon 18 del Código de Ética Profesional". *In re Vargas Velázquez*, supra, pág. 693.

[51] Véase *In re Maldonado Maldonado,* supra, pág. 813, citando a *In re Vargas Velázquez*, supra.

[52] *In re Avilés, Tosado,* 157 DPR 861, 893 (2002).

los aranceles debe actuar con diligencia en el desempeño de esta obligación.[53] Precisamente, en vista de que presentar los documentos al Registro de la Propiedad conlleva ciertos beneficios, pero no hacerlo pudiera conllevar consecuencias devastadoras para las partes, consideramos que la demora injustificada y por tiempo prolongado en cumplir esta encomienda es contraria a los postulados del Código de Ética Profesional.[54] Por ello, en virtud de la obligación que impone la ley de hacer y consignar las advertencias necesarias a los otorgantes, en *In re Maldonado Maldonado,* supra, pág. 816, señalamos que

> resulta lógico y razonable que un notario que se obliga a presentar una escritura pública en el Registro de la Propiedad y conoce que no se incluyó ——o no se le entregó—— como documento complementario la correspondiente certificación de cancelación de gravamen sobre donación del Departamento de Hacienda, haga constar la advertencia en la escritura pública.[55]

En cuanto al estándar de conducta que imponen los Cánones 12 y 18 del Código de Ética Profesional, supra, debemos resaltar que el Art. 57 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), Ley Núm. 198 de 8 de agosto de 1979, según enmendada, 30 LPRA ant. sec. 2260, vigente al momento de que la letrada se obligó a presentar los documentos para la inscripción, establecía el principio de tracto

---

[53] *In re Maldonado Maldonado,* supra, pág. 817. Véase *In re Salichs Martínez,* 131 DPR 481, 487-488 (1992).

[54] *In re Maldonado Maldonado,* supra, pág. 816.

[55] Íd.

sucesivo.[56] Este último consiste en mantener a los titulares registrales en orden, sin interrupciones, saltos ni lagunas, con el fin de que el Registro de la Propiedad muestre y publique el historial sucesivo completo de la propiedad.[57] Para cumplir este objetivo, este principio del Derecho Registral Inmobiliario demanda que el derecho a inscribirse conste previamente inscrito a favor de su transferente.[58]

El Art. 95 de la Ley Hipotecaria, supra, preceptuaba que el derecho hereditario podía inscribirse en el Registro de la Propiedad a favor de todos los que fueran declarados herederos cuando no se ha hecho la partición correspondiente del caudal hereditario.[59] Si el causante murió intestado, la ley exigía la declaratoria de herederos de la sucesión. Además, requería que el derecho hereditario estuviera inscrito en el Registro de la Propiedad previo a que pueda procederse con la inscripción de cualquier partición del caudal hereditario,

---

[56] Este principio se encuentra en el presente en el Art. 17 de la Ley del Registro de la Propiedad Inmobiliaria de Puerto Rico (Ley del Registro de la Propiedad de 2015), Ley Núm. 210-2015, 30 LPRA sec. 6032.

[57] Lo que se persigue es que "el transferente de hoy sea al adquirente de ayer, y el titular registral actual sea el transferente de mañana". L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3ra ed. rev., San Juan, Jurídica Editores, 2012, pág. 226.

[58] Íd., pág. 227.

[59] 30 LPRA ant. sec. 2316. Véase Arts. 126 y 131 de la Ley del Registro de la Propiedad de 2015, supra, 30 LPRA secs. 6181 y 6186, respectivamente ("El derecho hereditario se inscribirá a favor de todos los que resulten herederos mediante la presentación del testamento o la declaratoria de herederos"; "Mientras no se haya realizado la partición y adjudicación de la herencia, aún en aquellos casos en que se trate de un solo bien o aunque la cuota de cada heredero pueda determinarse, solamente podrá inscribirse a favor de cada heredero su derecho hereditario sobre una participación abstracta e indivisa en el caudal relicto").

así como cualquier trasferencia o gravamen a los bienes que formen parte del caudal.[60] Por su parte, el Reglamento Hipotecario, *supra*, pautaba que se debía incluir la certificación del Departamento de Hacienda sobre el relevo de gravamen de contribución sobre la herencia o la autorización para realizar la transacción que produjera la inscripción.[61] Según se disponía, esta instancia tenía que estar firmada ante notario, al menos por una de las partes de la sucesión, excepto cuando el abogado la suscribe.[62]

Por otro lado, el Canon 19 del Código de Ética Profesional, *supra*, establece el deber de todo abogado de "mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". Así pues, este impone a la clase togada la obligación de informar a sus clientes sobre las gestiones realizadas y el desarrollo de las encomiendas para las que fueron contratados. Esta obligación de mantener informado a los clientes es distinta y separada del deber de diligencia

---

[60] Art. 58 de la Ley Hipotecaria, supra, 30 LPRA ant. sec. 2261. Véase Art. 134 de la Ley del Registro de la Propiedad de 2015, supra, 30 LPRA sec. 6189 ("No se inscribirá el documento de partición de bienes hereditarios o de transferencia o gravamen del derecho hereditario si antes no aparece previamente inscrito el derecho hereditario a nombre de los herederos").

[61] Art. 50.2 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario), Reglamento Núm. 2674, según enmendado. Véase Reglas 127.1 y 129.1 del Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria de Puerto Rico (Reglamento de 2016), Reglamento Núm. 8816 de 14 de septiembre de 2016.

[62] Art. 50.2 del Reglamento Hipotecario, supra.

que se exige a los miembros de la profesión.[63] Por ello, se viola el referido precepto cuando no se informa del resultado adverso al cliente, no se atienden sus reclamos de información, no se mantiene al cliente informado del estado o situación procesal en el asunto que se encomendó al abogado, o cuando se le niega al cliente información de su caso.

Finalmente, el Canon 38 del Código de Ética Profesional, *supra*, establece la obligación de la clase togada de "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión". Impone, además, a los abogados y a los notarios el deber de "evitar hasta la apariencia de conducta profesional impropia".[64] En ese sentido, junto con el compromiso ético y moral que rige la profesión legal, el Canon 38, supra, exige que la clase togada examine continuamente su proceder de tal modo que su conducta esté acorde con el sentido puntual de responsabilidad que impone la función social que ejercen.[65] No cumplir con este mandato, "además de ser razón suficiente para sancionar a un abogado, atravies[a] la totalidad de nuestro ordenamiento ético disciplinario".[66] En vista de lo anterior, cuando los casos ante nuestra consideración tratan sobre notarios que faltan a la verdad y, por ende, a la fe pública notarial, hemos decretado que no es requisito "que el notario haya

---

[63] Íd., pág. 814; *In re Pietri Castellón,* 185 DPR 982, 992 (2012).

[64] Canon 38 del Código de Ética Profesional, supra.

[65] Íd., págs. 385-386.

[66] *In re Fingerhut Mandry*, supra, pág. 333.

faltado a la verdad intencionalmente para faltar a su fe notarial y al Canon 38, supra. […] Su violación puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario". (Énfasis omitido).[67]

Expuesto el marco jurídico pertinente al caso, procedemos a resolver.

### III

La letrada fue contratada para autorizar la escritura de compraventa, en la cual los vendedores pertenecían a dos sucesiones distintas. Como parte de los acuerdos, la licenciada García Cabrera se obligó a obtener la declaratoria de herederos de la sucesión de la Sra. Lutgarda Rivera Rivera y a tramitar la inscripción de los derechos hereditarios. Según fue contratado, el pago por las gestiones para obtener la declaratoria de herederos y la autorización de los poderes se efectuaría en la compraventa.

El 12 de junio de 2006 la letrada presentó la petición de la declaratoria de herederos de la sucesión Rivera Rivera. Tres meses más tarde, el 8 de septiembre de 2006, el tribunal de instancia emitió el dictamen correspondiente declarando los sucesores de la Sra. Lutgarda Rivera Rivera.

El 21 de octubre de 2006 la licenciada García Cabrera autorizó la Escritura de Compraventa, a la cual comparecieron los quejosos como compradores. Además, se señaló que

---

[67] *In re Pagani Padró,* supra, págs. 825-826, citando a *In re Sepúlveda Girón,* 155 DPR 345, 363 (2001).

compareció el señor López Rivera, por sí y en representación de la Sra. Evelyn Lut Carrero Irizarry, el Sr. Héctor Raúl López Rivera, la Sra. Irma López Rivera, el **Sr. Florindo Carrero** y la Sra. Martina Soledad Santiago.

En cuanto a los poderes que otorgaron los comparecientes representados por el señor López Rivera, la Escritura de Compraventa expresa lo siguiente:

> Todos representados en este acto por su poderdante autorizado mediante documentos de poder suscrito por cada uno de los aquí comparecientes **los cuales han sido debidamente protocolizados**, Don Samuel Gerardo López Rivera […]. (Énfasis suplido).

Ciertamente, la forma en que la letrada hizo referencia a los poderes en este instrumento público no cumple con lo dispuesto en el Art. 19 de la Ley Notarial, 4 LPRA sec. 2037, y la Regla 28 del Reglamento Notarial, supra. Esta debió expresar, en todo caso, además del tipo de documento que tuvo ante sí, la fecha del documento y el nombre del notario autorizante.[68]

Ahora bien, resulta pertinente transcribir otras partes de la Escritura de Compraventa, trascendentales al evaluar la conducta y el desempeño profesional de la licenciada García Cabrera:

> DOY FE del conocimiento personal tanto del comprador compareciente como de los vendedores, y por sus manifestaciones, que juzgo ciertas, las doy también de su edad, estado civil, ocupación y vecindad[.] Los comparecientes me aseguran tener, y a mi juicio tienen, la capacidad legal necesaria para este otorgamiento y en tal virtud libre y voluntariamente:
> EXPONEN

---

[68] Regla 28 del Reglamento Notarial, supra.

PRIMERO: **La Parte Vendedora es dueña en pleno dominio** de la siguiente propiedad:

.   .   .   .   .   .   .   .

SEGUNDO: La primera parte adquirió la antes descrita propiedad por herencia de sus padres fallecidos Don Marcelino Carrero Rivera y Lutgarda Rivera Rivera, así consta en testamento abierto otorgado por Don Marcelino Carrero Rivera ante la Notario Marilyn Lebrón Ruiz […].

A su vez en el caso de Doña Lutgarda Rivera Rivera, quien murió intestada, surge el derecho de los aquí herederos de la Resolución de Declaratoria de Herederos emitida por el Hon. José M. Fernández Luís, el 8 de septiembre de 2006 […] en el caso Ex Parte Samuel Gerardo López Rivera, Caso Número EJV 2006-0607.

El bien inmueble antes relacionado y descrito **fue adquirido por la Parte Vendedora, mediante herencia, derecho que consta adjudicado en escritura pública de Partición de Herencia otorgado ante la Notario Nilsa Luz Garcia Cabrera, […] mediante escritura número diez (10), otorgada el día cuatro de octubre del año dos mil seis (4/10/2006).**

.   .   .   .   .   .   .

CLAUSULAS Y CONDICIONES

.   .   .   .   .   .   .   .

DOS: Efectuarse esta venta por el convenido y ajustado precio de ciento veinticinco mil dólares ($125,000.00), de los cuales se le entreg[ó] previo a este acto a la Parte Vendedora cuatro (4) pagos parciales los cuales se detallan de la siguiente manera: Un pago de ochocientos noventa y seis dólares con cuatro centavos ($896.04) pagados mediante giro bancario n[ú]mero 1032339000000009 (2005), un segundo pago efectuado el veintiocho (28) de noviembre de dos mil (2005) [sic] por la suma de doscientos ochenta y siete dólares con diecinueve centavos ($287.19), un tercer pago efectuado el veintiocho (28) de diciembre de dos mil (2005) [sic] por la suma de doscientos ochenta y siete dólares con diecinueve centavos ($287.19) y un pago para saldar hipoteca a la que se encontraba afectada la propiedad objeto de esta compraventa, la suma de veinticuatro mil setecientos veinte y nueve dólares con treinta centavos ($24,729.30). Este pago fue efectuado el veintisiete de enero de[l] año dos mil seis (27/1/2006), mediante cheque de gerente número 103102700001975 emitido a nombre de Samuel Gerardo L[ó]pez Rivera, por el Banco Popular de Puerto Rico. **Manifiestan ambas partes que el pago restante por la suma de noventa y ocho mil ochocientos**

**dólares con veintiocho centavos ($98,800.28) es entregado en este acto a la Parte Vendedora** en moneda legal de los Estados Unidos de América, mediante cheque de gerente número 10310190007726 expedido con fecha del día de hoy por el Banco Popular de Puerto Rico […] otorgando total y eficaz carta de pago.

. . . . . . . .

ADVERTENCIAS

. . . . . . . .

Finalmente los comparecientes reconocen que La Notario les ha advertido que el inmueble vendido no aparece inscrito en el Registro de la Propiedad a favor de la Parte Vendedora, pero que el Vendedor entreg[ó] a la parte compradora copia certificada de la escritura en virtud del [sic] cual adquirió la propiedad, siendo ello así se le advierte a las partes que hasta tanto el Registrador no califique e inscriba dicho documento la presente escritura no será inscrita.

También se ha advertido a las partes que para inscribir la presente escritura necesitan como documentos complementarios la cop[i]a certificada de la escritura sobre partición de herencia donde se establece el derecho de la Parte Vendedora, copias certificadas de las actas de protocolización de los poderes emitidos al Mandatario autorizando su aceptación y firma de la presente compraventa, con su requisito de registro en el Registro de Poderes de la Oficina de Inspección de Notarías del Tribunal Supremo de Puerto Rico, copia certificada de la escritura de testamento abierto y Resolución de Declaratoria de Herederos emitida por el Tribunal de Instancia.

ACEPTACIÓN

Los comparecientes aceptan la presente escritura en todas sus partes por ser fiel exponente de lo convenido entre las partes, habiéndolos YO, la Notaria, hechos [sic] todas las advertencias y reservas legales pertinentes, **especialmente la que se refiere a que una copia legalizada de este instrumento p[ú]blico deberá ser presentada** _diligentemente_ **en el Registro de la Propiedad correspondiente para su inscripción.** […].
(Énfasis y subrayado suplido, y negritas omitidas).

Conforme se expone mediante nota incorporada al final de la Escritura de Compraventa, este instrumento público fue subsanado por la Escritura de Ratificación, autorizada por la letrada el 26 de septiembre de 2012. En esta, la licenciada

García Cabrera dio fe nuevamente de conocer personalmente a

la parte compradora —los quejosos— y a los vendedores. Sin

embargo, contrario a lo que señaló la Escritura de

Compraventa, este instrumento público consignó lo siguiente:

> QUINTO: Que allá en o para el año dos mil seis
> (2006), los comparecientes de la PRIEMREA [sic] y
> SEGUNDA PARTE convinieron la compraventa de la
> propiedad descrita en el expositivo primero,
> consumándose las prestaciones correspondientes
> mediante la compraventa otorgada ante la
> infrascrito notario mediante escritura número uno
> del veintiuno de octubre del año dos mil seis. En
> virtud del la [sic] referida escritura de
> compraventa los comparecientes de la primera parte
> como vendedores y los compradores pactaron la
> compraventa de la propiedad por la suma final de
> ciento veinticinco mil dólares, **de los cuales <u>los
> compradores se reservaron</u> la suma de noventa y ocho
> mil ochocientos dólares con veintiocho centavos
> para el pago de la hipoteca que afectaba la
> propiedad entregando a los vendedores la diferencia**
> mediante cheques de gerente que se detallan en la
> primera cláusula DOS de las cláusulas y condiciones
> de la escritura original de compraventa antes
> mencionada.
>
> .    .    .    .    .    .    .    .
>
> CINCO: Las partes comparecientes aclaran y
> subsanan que en la cl[á]usula DOS de la referida
> escritura de compraventa número once (11) de
> veintiuno (21) de octubre del año dos mil seise
> [sic] (2006) erróneamente se hizo constar un dato
> sobre **el otorgamiento de una escritura de división
> de bienes hereditarios ante la infrascrito Notario.
> Las partes aclaran que dicha escritura <u>nunca se
> otorgó</u>,** ya que al momento de la escritura original
> aún no se habían tramitado los correspondientes
> relevos de herencia de los causantes, y como todos
> los comparecientes tenían urgencia de consumar el
> acuerdo de compraventa, aceptaron de manera libre,
> voluntaria e inteligente, suscribir y otorgar la
> escritura de compraventa a sabiendas de que dicho
> instrumento no podría cobrar vida en el registro de
> la propiedad hasta que se realizaran, y finalizaran
> todas las gestiones para la inscripción de los
> derechos hereditarios de ambos causantes, y
> comparecieran los herederos, que aún no habían
> comparecido en dicho momento. Por tal razón las
> partes solicitan se elimine el penúltimo párrafo de
> la página cinco, cláusula SEGUNDO de los títulos de

carga del referido instrumento público, y hacen
constar que su eliminación no es incompatible con
el acto jurídico otorgado y suscrito por las partes
otorgantes en el instrumento público.

.    .    .    .    .    .    .    .
                    ADVERTENCIAS
Los comparecientes luego de haber tenido la
oportunidad de leer el instrumento, aceptan,
rectifican y ratifican, con sus iniciales y con su
firma, al pie del documento, todos los acuerdos,
cambios y correcciones, así como la ratificación de
la compraventa celebrada entre las partes, y
expresan que el documento ha sido redactado
conforme al deseo, y voluntad de los comparecientes
por lo que yo, la Notario, les hice las reservas
legales y advertencias legales pertinentes a este
otorgamiento.

También se ha advertido a las partes que con
la primera copia certificada se acompañan y se
hacen formar parte de la escritura los siguientes
documentos complementarios: copias certificadas de
los relevos de herencia de cada causante, **copias
certificadas de las actas de protocolización de los
poderes emitidos al Mandatario autorizando su
aceptación y firma de la presente acta**, con su
requisito en el Registro de Poderes de la Oficina
de Inspección de Notarias del Tribunal Supremo de
Puerto Rico, copia certificada de la escritura de
testamento abierto y Resolución de Declaratoria de
Herederos emitida por el Tribunal de Instancia.

.    .    .    .    .    .    .    .
Leída esta escritura por los comparecientes,
en la misma se ratifican en su contenido, y estampan
sus iniciales al margen izquierdo de todos y cada
uno de los folios de esta escritura y la firman
ante mí, la Notario, quien de todo lo dicho y
consignado en este instrumento público, el cual
firmo, signo, rubrico y sello, en esta acta de
rectificación y ratificación, Yo, la Notaria, DOY
FE. (Énfasis y subrayado suplido).[69]

---

[69] De esta Escritura, surgieron varios instrumentos
adicionales para subsanar ciertas deficiencias. A saber, la
Escritura Núm. 40 de 5 de octubre de 2012 y la Escritura Núm. 44
de 30 de septiembre de 2015. En la Escritura Núm. 40 se indicó,
mediante nota de saca, que se expidió copia certificada a favor de
Carmen Rosaida Silva, quien no figura como compareciente en la
Escritura de Compraventa ni en la Escritura de Ratificación. La
letrada señaló que esto fue un error que cometió por inadvertencia
y que no se había emitido copia certificada a su favor, sino que
puso su nombre por equivocación porque esta era una cliente en otro
asunto. La Oficina del Procurador General concluyó que no había
prueba que refutara lo alegado por la licenciada García Cabrera.

El Procurador General estimó que no había evidencia para rebatir la dación de fe de la letrada en cuanto a cuáles vendedores fueron representados por el señor López Rivera y su conocimiento personal. Además, que la letrada explicó que fue el señor López Rivera quien puso los nombres y las iniciales de todos los vendedores que este representaba.[70]

Ahora bien, del texto de ambos instrumentos públicos surge que la letrada consignó hechos falsos cuando su falsedad le constaba de propio conocimiento. En la Escritura Pública hizo constar que el 4 de octubre de 2006 **ella había instrumentalizado** la Escritura de Partición de la herencia; que en ella se había adjudicado el inmueble objeto de la compraventa a los vendedores, y que estos últimos eran sus dueños en pleno dominio. Empero, según se refutó este hecho en la Escritura de Ratificación, tal partición del caudal hereditario no se había efectuado. De hecho, esta tenía conocimiento de que no se contaba con las Planillas de Contribución sobre la herencia.

---

[70] En cuanto a la dación de fe de la letrada del conocimiento personal de los comparecientes y la discrepancia de los nombres o firma en los instrumentos públicos, coincidimos con la Oficina del Procurador General, en cuanto a que no hay prueba en el expediente que rebata la explicación que ofreció la licenciada García Cabrera. Cabe señalar, de hecho, que la ley lo que dispone es que el "representante suscribirá el documento con su propia firma **sin que sea necesario** que anteponga el nombre de su representado, ni use la firma o razón de la entidad que represente". (Énfasis suplido). Art. 18 de la Ley Notarial, supra. Que no sea necesario que anteponga el nombre de su representado no significa que hacerlo infrinja la ley. Así, el que se haga no conlleva necesariamente una violación al Art. 18 de la Ley Notarial. Lo que sucede es que esto puede poner en duda, si no se aclara el asunto en el instrumento público, si realmente comparecieron mediante representación.

Asimismo, la licenciada García Cabrera dio fe de que los vendedores-otorgantes eran dueños en pleno dominio de la propiedad. Ello, cuando, de acuerdo a la declaratoria de herederos que emitió el foro primario, otras personas que no comparecieron por sí, ni mediante representación, también figuraban como codueños del inmueble. La Escritura de Compraventa expresó, además, que al otorgarse los vendedores entregaron a los quejosos la copia certificada de la escritura, lo cual de las comparecencias de la letrada se infiere que no sucedió.

Nótese, de igual manera, que la Escritura de Compraventa expresa que la suma $ 98,800.28 había sido entregada en el acto de otorgamiento, mediante cheque de gerente expedido ese mismo día y, por tanto, se había otorgado carta de pago. Sin embargo, en la Escritura de Ratificación se refutó este hecho por la propia letrada. En su lugar esta consignó que los compradores se reservaron esa cantidad del precio para el pago de la hipoteca que gravaba el inmueble.

Por otro lado, cabe resaltar que al examinar la Escritura de Compraventa pudimos notar que se indica que el señor Carrero Román compareció a ese acto. De hecho, este se incluye dentro de los vendedores que comparecieron representados por el señor López Rivera. En ninguna parte de la escritura se aclaró que el señor Carrero Román no había comparecido. Tampoco se indicó que este no fue representado en el otorgamiento de ese instrumento por el señor López Rivera, pues no se contaba con un poder válido.

Al hacer constar y dar fe de estos hechos, que no correspondían a la realidad, la licenciada García Cabrera violó la fe pública notarial. Esto, a su vez, la apartó del deber de sinceridad y honradez que debe guiar la función profesional de la abogacía y la notaría. En ese sentido, su falta de cuidado al investigar los antecedentes y estipulaciones del negocio jurídico, la llevaron a violar la fe pública notarial, el Art. 14 de la Ley Notarial, así como los Cánones 35 y 38 del Código de Ética Profesional.

Además, un examen de la Escritura de Compraventa demuestra que no se consignó alguna advertencia a los otorgantes respecto a que algunos herederos no habían comparecido. Tampoco se hizo en cuanto a la necesidad de que el instrumento fuera ratificado por aquellos titulares que no comparecieron por sí, ni mediante representante. La letrada tampoco incorporó a la escritura algún señalamiento sobre las consecuencias de la falta de otros titulares para la validez del negocio jurídico.

¿Qué más necesario que consignar aquellas advertencias que, dadas las circunstancias particulares del caso, podían afectar la validez del negocio jurídico y la posterior inscripción de este en el Registro de la Propiedad? Así pues, la licenciada García Cabrera incumplió con el mandato del Art. 15(f) de la Ley Notarial, supra. Es que, como

mencionamos, el negocio autorizado sería nulo, salvo que la persona a cuyo nombre se otorgó lo ratifique.[71]

Al recibir el informe de la ODIN habían transcurrido diez años de haberse otorgado la Escritura de Compraventa. En ese momento ni siquiera se habían presentado las instancias sobre los derechos hereditarios de ambas sucesiones al Registro de la Propiedad. Tampoco se habían presentado los instrumentos públicos correspondientes para su inscripción. No fue hasta el 1 de febrero de 2017 ——casi once años después de asumir esta obligación y de otorgarse la escritura de compraventa—— que fueron presentadas. De igual manera, la Escritura de Compraventa y la Escritura de Ratificación se presentaron el 28 de febrero de 2017.[72]

La licenciada García Cabrera intentó justificar su demora en la presentación de los documentos al Registro de la Propiedad porque presuntamente tuvo gran dificultad en comunicarse con el señor López Rivera para que suscribiera las instancias sobre derechos hereditarios. Además, arguyó que no se le pagaron los derechos de presentación e inscripción de los referidos documentos. Señaló que la tardanza también se debió a que no contaba con el poder del

---

[71] Véanse: Art. 1211 del Código Civil de Puerto Rico, supra; *In re Martínez Almodóvar,* supra, pág. 816.

[72] A la Escritura de Compraventa la acompañaron como documentos complementarios una Escritura de Poder General Número 3 de 12 de abril de 2006, ante la licenciada García Cabrera, y las Escrituras 4, 5, 6 de Acta de Protocolización de Poder de 13 de abril de 2006. No surge del *Recibo de presentación* que se presentara otro documento complementario. Véase Anejo 18, págs. 82-84.

señor Carrero Román, pues este no había sido legalizado por la autoridad competente. Por otro lado, alegó que llevó a cabo trámites para obtener las copias certificadas de los instrumentos públicos que autorizó, para aliviar la carga económica de los quejosos y presentar los documentos en el Registro de la Propiedad.

Empero, no podemos validar los planteamientos de la letrada por varias razones. *Primero,* conforme al Art. 50.2 del Reglamento Hipotecario, y como bien expuso la ODIN, la licenciada García Cabrera podía suscribir la instancia en lugar del señor López Rivera.[73] *Segundo,* esta acordó que cobraría a los vendedores del inmueble por la declaratoria de herederos y los poderes cuando se otorgara la compraventa. Más aún, *en tercer lugar*, cabe resaltar que el señor López Rivera compareció en el 2012 a la Escritura de Ratificación. *Cuarto*, como bien señaló la ODIN, en cuanto al poder otorgado por el señor Carrero Román, la letrada podía solicitar la legalización a la oficina del *County Clerk* o al Departamento de Estado. *Quinto*, esta fue quien se obligó a tramitar la inscripción de los derechos hereditarios y la Escritura de Compraventa en el Registro de la Propiedad. De hecho, la Escritura de Ratificación señala que en ese momento se emitió una copia certificada de esa acta que contenía como documentos complementarios las copias certificadas de los instrumentos

---

[73] Para disposiciones similares, véanse las Reglas 127.1 y 129.1 del Reglamento del Registro de la Propiedad.

públicos. Para afirmar esto, la notaria debió tener en su poder las copias certificadas de las escrituras públicas.

Todo lo anterior, demuestra la falta de diligencia de la licenciada García Cabrera y un profundo desconocimiento de las normas legales aplicables. Como consecuencia, nos es forzoso concluir que infringió los Cánones 12 y 18 del Código de Ética Profesional.

Autorizar una Escritura de Compraventa a unos herederos sin que sus derechos hereditarios estén inscritos en el Registro de la Propiedad no es una violación ética. Ello, pues la inscripción en el Registro no es una obligación de quien lleva a cabo negocios jurídicos. La infracción ética surge cuando el letrado se obliga a realizar ciertos actos que no cumple diligentemente o para los cuales no cuenta con el conocimiento necesario. Además, la violación legal y ética se produce si este autoriza algún instrumento con conocimiento de que no cumple totalmente con los requisitos indispensables para su validez; o cuando lo autoriza y da fe de hechos que no corresponden a la realidad, a sabiendas de que son falsos. Esto es lo que dio lugar a las infracciones de la letrada.

Esta se obligó a autorizar la escritura de compraventa del inmueble sito en el municipio de Cidra y hacer los trámites necesarios para la presentación e inscripción del referido negocio jurídico. La inscripción del título de los quejosos, como compradores del inmueble, en virtud del principio de tracto sucesivo, estaba sujeta a que se lograra

la inscripción previa del derecho hereditario de los vendedores. Lo cierto es que la licenciada García Cabrera debió ejercer mayor diligencia en el cumplimiento de esta encomienda, especialmente cuando había acordado que cobraría por el trámite de la declaratoria de herederos y por los poderes una vez se consumara la compraventa. Más aún, cuando esta reconoció que había mencionado a los quejosos que luego de que se realiza un negocio y los vendedores obtienen su dinero, es común que estos entren en un estado de dejadez para culminar el proceso.

En cuanto a su deber de mantener informados a los quejosos, la letrada admitió que incumplió con esta obligación. En particular, conforme surge del expediente, pasaron cinco años para que esta se comunicara con ellos y pudieran adelantarse aquellos trámites necesarios para lograr la inscripción del título de los quejosos en el Registro de la Propiedad. Asimismo, cuando fue notificada de una reunión con los quejosos y la licenciada Colón Rivera, ni siquiera se comunicó con estos para excusarse. En su lugar, señaló que no pudo porque estaba representando un cliente en un juicio de asesinato por jurado. Asimismo, no nos parece que su conducta, de esperar el dictamen del foro apelativo en el caso contra el señor Carrero Román sin informarle a los quejosos, se ajustara a lo dispuesto en el Canon 19 del Código de Ética Profesional.

Por estas razones, es forzoso concluir que la licenciada García Cabrera incurrió en conducta contraria a la fe pública

notarial, la Ley Notarial y su reglamento, así como a los Cánones 12, 18, 19, 35 y 38 del Código de Ética Profesional. Como consecuencia, procedemos a evaluar la sanción que debemos imponer.

## IV

Ningún caso disciplinario es idéntico. Hay ciertas circunstancias que afectan la imposición de las sanciones. Por ello, además de las infracciones cometidas, este Tribunal ha establecido que para la imposición de sanciones disciplinarias, hemos expuesto en un sinnúmero de ocasiones que podemos tomar en consideración los factores siguientes: (1) la reputación del letrado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) el resarcimiento al cliente, y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos.[74]

---

[74] *In re Pagani Padró,* 198 DPR 812, 826-827 (2017).

La letrada arguyó que la sanción propuesta por la ODIN es excesiva, pues la jurisprudencia de este Tribunal, en casos similares, ha impuesto suspensiones menores al término de seis meses que se recomendó. Ciertamente, en *In re Maldonado Maldonado,* supra, suspendimos a la abogada por un término de tres meses de la práctica de la notaría. Sin embargo, debemos notar que en aquella ocasión la abogada no infringió la fe pública notarial. Las violaciones fueron a los Cánones 12, 18 y 19 del Código de Ética Profesional, así como al Art. 15(f) de la Ley Notarial. Además, a diferencia del caso de autos, en *In re Pagán Pagán,* 171 DPR 975 (2007)*,* se limitó al Canon 38 del Código de Ética Profesional. Así, al tomar en consideración la larga experiencia profesional y el hecho de que la actuación del abogado, en efecto, no perjudicó a ninguna persona*,* limitamos nuestra sanción a una amonestación,

Es menester señalar que la licenciada García Cabrera no

ha sido suspendida de la profesión anteriormente.[75] Además,

aunque en un inicio negó sus faltas, en su última

_____

apercibiéndole para que su conducta en el futuro sea acorde a lo que requieren el honor y la dignidad de la profesión. Por otro lado, en *In re Rodríguez Mercado*, 133 DPR 208 (1993), solo encontramos infringidos los Cánones 18 y 19 del Código de Ética Profesional, pues se obligó a presentar una escritura al Registro de la Propiedad para su inscripción y habían transcurrido más de siete años sin llevar a cabo esta gestión. De igual manera, no había mantenido informada a la cliente. Nos limitamos a separarlo de la profesión de la abogacía por el término de seis meses.

En *In re Pagani Padró,* supra, donde el abogado dio fe de que se pagó el dinero de una compraventa al vendedor, lo que no correspondía con la realidad; y autorizó la escritura de compraventa sin que se realizara un estudio de título, lo cual no permitió que el negocio jurídico lograra acceso al Registro de la Propiedad. Ahora bien, allí el licenciado Pagani Padró aceptó desde el inicio su responsabilidad, mostró un sincero arrepentimiento por la falta cometida, y nadie se perjudicó como resultado de su conducta, ya que el licenciado Pagani Padró realizó las gestiones necesarias para que el instrumento público en cuestión lograra acceso al Registro de la Propiedad. Por ello, este Tribunal se limitó a censurar al abogado por la conducta que desplegó y le apercibió que debía observar de forma escrupulosa los principios deontológicos que se recogen en el Código de Ética Profesional.

Empero, por resultar diferente en varios aspectos, en *In re Belén Trujillo*, supra, el Tribunal suspendió a un abogado por tres meses de la abogacía y la notaría por dar fe de hechos falsos en una escritura. Asimismo, en *In re Vargas Velázquez*, supra, la sanción que se impuso fue la suspensión del ejercicio de la abogacía por un término de seis meses e indefinidamente de la notaría. Esto se debió a que el abogado autorizó una escritura de partición de herencia para hacer viable la inscripción de un inmueble en el Registro de la Propiedad, para lo cual no se había hecho estudio de título. Tampoco se consignaron advertencias al respecto. Sin embargo, se presentó la escritura sin que el derecho hereditario estuviera inscrito, lo que impidió que se lograra el trámite. Además, faltaban firmas e iniciales de varios otorgantes en la escritura. Cabe resaltar que la sanción tomó en consideración que esa no era la primera vez que el licenciado Vargas Velázquez violaba el Código de Ética Profesional. Lo habíamos suspendido en 1979 del ejercicio de la notaría y habíamos censurado enérgicamente en otra ocasión por violar el Canon 18 del Código de Ética Profesional.

[75] El 14 de junio de 2016 emitimos una Resolución ordenando el archivo de un proceso disciplinario que se seguía contra la licenciada García Cabrera. Apercibimos que tenía que tener mayor cuidado al renunciar a la representación legal de sus clientes. Asimismo, le indicamos que debía ejercer mejor juicio en cuanto a las apariencias conflictivas que pudieran provocar su conducta al intervenir como notaria.

comparecencia reconoció parte de estas.[76] Por otro lado, esta

ha adelantado varios trámites, a su costo, para que el título

fuera debidamente inscrito ante el Registro de la Propiedad.[77]

No obstante, debemos puntualizar que hay varios trámites

importantes que faltan por cumplirse, los cuales resultan

indispensables para lograr la inscripción del título de los

quejosos ante el Registro de la Propiedad. Por ejemplo, como

bien señalan los quejosos, no vemos en el expediente que se

---

[76] Véase, e.g., *Moción en cumplimiento de resolución*, pág. 15, y la *Moción en cumplimiento de orden y moción responsiva a informe de ODI[N]*, págs. 19-20.

[77] En la *Moción en cumplimiento de resolución*, pág. 3, presentada el 1 de junio de 2017 la letrada expresó que sufragó:

"1. Todos los costos de investigación para la localización de los herederos vendedores para lograr su comparecencia al negocio jurídico a un costo de $600.00.

2. Todos los costos de otorgamiento y el pago de los aranceles de presentación de la Instancia de Derechos Hereditarios de Marcelino Carrero por la suma de $221.50[.]

3. Todos los costos de otorgamiento y el pago de los aranceles de presentación de la Instancia de Derechos Hereditarios de Lutgarda Rivera por la suma de $221.50[.]

4. El pago de los aranceles de emisión de la segunda copia certificada de la Escritura de Compraventa, Escritura # 6 de 2006 por la suma en sellos de $71.50.

5. El pago de los aranceles de presentación ante el Registro de la Propiedad de la Escritura de Compraventa, Escritura # 6 de 2006 por la suma de $460.50.

6. Los gastos y trámites[,] así como pago de aranceles de otorgamiento, de expedición de primera copia certificada, así como los aranceles de presentación ante el Registro de la Propiedad de la Escritura de Rectificación y Ratificación número 37 de 2012 por la suma de $22.50".

Como prueba, anejó los recibos de presentación al Registro de la Propiedad. Asimismo, expresó lo siguiente en cuanto a su responsabilidad con los quejosos: "No obstante[,] acepto haber fallado en mi obligación de no mantener siempre informado del detalle de las gestiones realizadas o m[á]s celosamente a mis clientes, lo que lamento de todo corazón". Íd., pág. 15.

haya llevado a cabo la ratificación de la Escritura de Compraventa en lugar del señor Carrero Román, según el foro primario ordenó.[78] En su lugar, solo contamos con una especie de borrador de un documento titulado *Acta de ratificación de acta de rectificación y de ratificación de compraventa*, el cual no cuenta con la firma de ninguna persona ni otros elementos indispensables para su validez. Por lo que debemos presumir que la compraventa en cuestión no ha sido ratificada. Asimismo, aunque esta expresa que ha realizado estos trámites sin ánimo de lucro, existe prueba en el expediente que refleja cobros de su parte por la presentación de los documentos al Registro de la Propiedad.[79] También, no podemos ignorar que los quejosos no han podido vender el inmueble ante la falta de que este se encuentre inscrito en el Registro de la Propiedad y, por tanto, no han podido culminar el proceso de liquidación de los bienes gananciales pertenecientes a la extinta Sociedad Legal de Gananciales.[80] Por estas razones,

---

[78] Véase *Sentencia* y *Mandamiento* en el Apéndice del *Formulario de Quejas*, en el cual el foro primario ordenó que "[e]n cumplimiento con la orden emitida por este Hon. Tribunal, mediante Sentencia, se emite este Mandamiento, y se requiere a usted, Sr. Alguacil del Tribunal de Primera Instancia, a que comparezca en la escritura de rectificación de cabida y/o acta aclaratoria y/o cualquier escritura, en nombre del demandado, Florindo Carrero Román". Véase, además, *Resolución* del Tribunal de Apelaciones, KLAN201402057, en el Apéndice de la *Moción en cumplimiento de resolución,* pág. 204.

[79] Véase, e.g., la comunicación de 1 de febrero de 2017 al señor Lopéz Rivera en el Apéndice de la *Moción en cumplimiento de resolución,* págs. 232-233.

[80] Cabe mencionar que la licenciada García Cabrera ha sido objeto de varias quejas ante este Tribunal por aspectos relacionados al ejercicio de la notaría. Por ejemplo, el 24 de junio de 2016 emitimos una resolución en la cual archivamos la queja AB-2015-069 no sin antes apercibirle que debía ejercer mejor juicio sobre las posibles apariencias conflictivas que pudiera suscitar su conducta a la hora de intervenir como notaria. Asimismo, el 15 de junio de 2012 habíamos archivado un asunto relacionado

no nos parece que la sanción recomendada por la ODIN sea suficiente. Las violaciones éticas incurridas por la letrada ameritan una medida disciplinaria más severa.

**V**

Por los fundamentos que anteceden, *suspendemos indefinidamente a la licenciada García Cabrera de la práctica de la notaría. Además, la censuramos enérgicamente por no apegarse de forma cabal a los postulados mínimos que exigen el ejercicio de la profesión. Le advertimos que en el futuro debe ser sumamente cuidadosa en el desempeño de sus funciones y en el cumplimiento de las obligaciones que asume con sus clientes.*

*La fianza notarial queda automáticamente cancelada y se considerará buena y válida por tres años después de su terminación en cuanto a actos realizados por la licenciada García Cabrera durante el periodo en que la misma estuvo vigente.*

*El Alguacil de este Tribunal deberá incautar inmediatamente la obra protocolar y sello notarial de la letrada y entregarlos al director de la ODIN.*

*Ordenamos a la licenciada García Cabrera que, a su costo, complete el trámite de presentación del título de los quejosos ante el Registro de la Propiedad correspondiente; de modo que la Escritura de Compraventa en cuestión constituya un título*

---

con el estado de la obra notarial de la letrada. Allí, también le apercibimos que en el futuro debía ser más cuidadosa en el desempeño de su función notarial.

*inscribible. Se concede a la licenciada García Cabrera un término de treinta (30) días para certificar ante este Tribunal y la ODIN el cumplimiento de lo anterior. Se le apercibe que el incumplimiento con nuestra orden puede conllevar la imposición de sanciones severas, incluyendo la suspensión indefinida del ejercicio de la abogacía.*

*Se dictará sentencia de conformidad.*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

<table>
<tr><td><em>In re:</em></td><td></td></tr>
<tr><td><em>Nilsa L. García Cabrera</em><br>(TS-9,942)</td><td>AB-2015-302</td></tr>
</table>

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de febrero de 2019.

Por los fundamentos que anteceden, los cuales se hacen formar parte de esta sentencia, suspendemos indefinidamente a la Lcda. Nilsa L. García Cabrera de la práctica de la notaría. Además, la censuramos enérgicamente por no apegarse de forma cabal a los postulados mínimos que exigen el ejercicio de la profesión. Le advertimos que en el futuro debe ser sumamente cuidadosa en el desempeño de sus funciones y en el cumplimiento de las obligaciones que asume con sus clientes.

La fianza notarial queda automáticamente cancelada y se considerará buena y válida por tres años después de su terminación en cuanto a actos realizados por la licenciada García Cabrera durante el periodo en que la misma estuvo vigente.

El Alguacil de este Tribunal deberá incautar inmediatamente la obra protocolar y sello notarial de la letrada y entregarlos al director de la ODIN.

Ordenamos a la licenciada García Cabrera que, a su costo, complete el trámite de presentación del título de los quejosos ante el Registro de la Propiedad correspondiente; de modo que la Escritura de Compraventa en cuestión constituya un título inscribible. Se concede a la licenciada García Cabrera un término de treinta (30) días para certificar ante este Tribunal y la ODIN el cumplimiento de lo anterior. Se le apercibe que el incumplimiento con nuestra orden puede conllevar la imposición de sanciones severas, incluyendo la suspensión indefinida del ejercicio de la abogacía.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres y la Jueza Asociada señora Pabón Charneco limitarían la suspensión de la notaría a seis (6) meses, como recomendó ODIN. La Juez

Asociada señora Rodríguez Rodríguez, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Colón Pérez no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo